**Ted Alan TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

Court of Appeals of Texas,
San Antonio.

May 7, 1997.

John Cutright, Law Office of John Cutright, Austin, Appellant.

Lynn Ellison, District Attorney, Jennifer B. Rosenblatt, Assistant District Attorney, Jourdanton, for Appellee.

Before RICKHOFF and STONE, JJ., and CHARLES F. CAMPBELL, Former Judge.[1]

CHARLES F. CAMPBELL, Former Judge.

Appellant, Ted Alan Taylor, was convicted by a jury of the offense of attempted murder. Based on his election, the appellant was sentenced by the trial court to twenty years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant filed a motion for new trial which was subsequently overruled by the trial court. Appeal was then timely perfected to this court. Appellant raise three points of error, challenging the sufficiency of the evidence, the trial court's failure to make a *sua sponte* determination of appellant's competency to stand trial, and the effectiveness of appellant's trial counsel. We will affirm.

Because appellant challenges the "legal" sufficiency[2] of the evidence to support the conviction, a brief summary of the facts is necessary. Viewed in a light most favorable to the verdict, on December 5, 1994 the victim, Lloyd Brown, his cousin Daniel Brown and a co-worker, Juan Garcia were traveling north on IH 35, sometime between 7 and 8 P.M., between Laredo and San Antonio in a truck. Somewhere near Encinal, an individual in a blue, Chevy S 10 pickup truck passed Brown's truck and two other semi-trucks on the shoulder of the road. The S 10 truck was equipped with a handmade, wooden camper that was painted black and had tinted windows. Lloyd Brown described it as a "one of a kind vehicle." The S 10 attempted to play a "cat and mouse" game

with Brown's truck, passing Brown and then slowing down, waiting for Brown to catch up. This "game" continued for about 100 miles in the northbound lane of the interstate until Brown neared Lytle, when a person in the S 10 fired two shots at Brown's truck. One of the bullets penetrated the truck and struck Lloyd Brown in the side. The bullet ultimately lodged near Brown's spine and could not be removed. At that point the three stopped and sought and got medical attention for Lloyd Brown. The S 10 proceeded north on IH 35. Since the Browns were able to get the license plate number of the S 10, local police authorities put out an All Points Bulletin (APB) on the S 10.

Shortly after midnight on December 6, 1994, Officer Mark Sikes of the Texas Lutheran College campus police in Seguin, arrested appellant near the campus of the college in connection with a report of the discharge of a firearm. Sikes removed a Baretta 9 millimeter automatic pistol, two magazines filled with ammunition and a set of car keys from appellant's person. As Sikes was transporting appellant to jail, appellant identified the Chevy S 10 pickup, parked in a park-n-ride lot, as being his vehicle. It was determined that the keys taken from appellant's person fit both the S 10 cab and the camper. One of the sheriff's deputies working the case recognized the vehicle from the APB. The S 10 was towed from Seguin to Lytle. Later that day, Daniel Brown and Juan Garcia positively identified the S 10 as being the vehicle from which the shots were fired. When police searched the S 10, they recovered, inter alia, two spent 9 millimeter shell casings.

### Appellant's First Point

In his first point of error appellant claims the evidence is insufficient to support a conviction. He only challenges the proof of appellant's identity—not the other elements of the crime of attempted murder. He avers that the State failed to prove any motive on

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

2. There is no challenge to the factual sufficiency of the evidence. *See Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996).

the part of appellant for attempting to kill Lloyd Brown, failed to introduce any fingerprints on any of the evidence and failed to conduct ballistics tests on the gun recovered from appellant, or from either of the two bullets fired at the victim. Appellant cites as primary authority, *Michalenko v. State*, 658 S.W.2d 760 (Tex.App.—Austin 1983, pet. dism'd, 678 S.W.2d 75 (Tex.Crim.App.1984)). In his brief, appellant concedes that the *Michalenko* court utilized the "reasonable hypothesis analytical construct" to determine sufficiency, an analysis used by appellate courts to determine sufficiency in circumstantial evidence cases.[3] The "reasonable hypothesis analytical construct" was abandoned by the court of criminal appeals, however, in *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991).

## Applicable Law

The proper standard of review for determining legal sufficiency of the evidence in both direct and circumstantial evidence cases after the decision in *Geesa* is that announced in *Jackson v. Virginia:* that the evidence must be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991). Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The court is never to make its own myopic determination of guilt from reading the cold record. *Id.* It is not the reviewing court's duty to disregard, realign or weigh evidence. *Id.* Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict. *Id.* An appellate court is to position itself as a final, due process safeguard, ensuring only the rationality of the factfinder. *Id.*

---

3. In circumstantial evidence cases the "reasonable hypothesis analytical construct" translated into a requirement that the evidence exclude every reasonable hypothesis other than guilt. If

## Application of Law to Facts

■ Viewed in a light most favorable to the jury's verdict, the only issue genuinely in dispute is whether appellant was the perpetrator. It is clear that Lloyd and Daniel Brown and Juan Garcia were in a vehicle headed north on IH 35 when accosted by someone in a blue Chevy S 10 pickup truck with a one of a kind homemade camper attached. This "cat and mouse" ordeal came about when the two vehicles became ensnared in truck traffic on the highway. It is a reasonable inference from the evidence that the person in the blue S 10 became angry at the Browns and Garcia because of difficulty passing them and the semi-trucks. This anger apparently escalated into a deadly "cat and mouse" game that ultimately resulted in the shooting of Lloyd Brown.

The record shows that the approximate distance from Lytle to Seguin is about 100 miles, so it was reasonable for the jury to infer that the S 10 pickup continued northward to Seguin. It was also reasonable for the jury to assume that the gun recovered from inside appellant's waistband shortly after midnight was the same gun used to shoot Lloyd Brown. This inference is supported by the recovery of fully-loaded ammunition magazines from the appellant's person and two spent 9 millimeter cartridges recovered from inside the cab of a blue Chevy S 10 pickup truck; a truck positively identified by its license tag and unique camper, and a truck to which appellant claimed ownership and to which appellant's keys fit. We find that a rational trier of fact could have found appellant guilty beyond a reasonable doubt. Point of error one is overruled.

In point of error two, appellant complains the trial court erred in failing to make a determination on the issue of appellant's competency after evidence of incompetence was brought to the attention of the trial court. Appellant argues that, pursuant to TEX.CODE CRIM.PROC.ANN. 46.02, sec. 2(b) (Vernon 1979), the trial court should have

---

the evidence supported an inference other than the guilt of the defendant, a finding of guilt beyond a reasonable doubt was not a rational finding. *Geesa v. State*, 820 S.W.2d at 158.

*sua sponte*[4] impaneled a jury to determine appellant's competence to stand trial.[5] Appellant claims that evidence was presented to the probation officer from relatives of appellant that showed a pattern of aberrant behavior by appellant; that a psychologist who examined appellant pursuant to a pre-sentence report offered the opinion that appellant had personality problems, as well as perceptual distortions and eccentricities of behavior; and that the trial court personally observed during the trial that "he [appellant] might be subject to a psychiatric evaluation." Further at a hearing on a motion for new trial, a psychiatrist hired by appellant testified that, in her opinion, appellant was not competent at the time of trial.

## Applicable Law

■ It is well settled that the conviction of one who is legally incompetent to stand trial violates due process of law. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Once an issue of incompetency arises, a separate hearing for determination of competency is required to meet due process demands. *Thompson v. State*, 915 S.W.2d 897, 901 (Tex.App.—Houston [1st Dist.] 1996, pet. ref.). In Texas, the hearing must be conducted by jury trial. *See* Art. 46.02, sec. 4.

■ Whether an issue of incompetency exists at the time of trial is left to the discretion of the trial judge. *Thompson v. State*, 915 S.W.2d at 901. Therefore, in determining whether the trial court erred in not conducting a competency hearing, we must apply an abuse of discretion standard. *Id.; see also Valdes–Fuerte v. State*, 892 S.W.2d 103, 107 (Tex.App.—San Antonio 1994, no pet.).[6] In order to trigger a hearing under Art. 46.02, sec. 2(b), the evidence must be sufficient to create a bona fide doubt in the mind of the trial court whether a defendant meets the test of legal competence.[7] *Id.* at 901. The trial court is to assay just that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency. *Sisco v. State*, 599 S.W.2d 607, 613 (Tex.Crim.App.1980).

The trial court may rely upon personal observations, known facts, evidence presented, motions, affidavits, or any reasonable claim or credible source creating a bona fide doubt of a defendant's competency to stand trial. *Id.* at 902. Each situation must be examined on a case by case basis to determine if a bona fide doubt is raised. *Id.*

## Application of Law to Facts

■ In the instant case, if we apply a strict interpretation of *Sisco*, we are required to set aside the opinion of the psychologist,

4. No pretrial issue of competency was raised by appellant nor was any issue made of it during the guilt/innocence phase of trial, other than musings or observations by appellant's trial counsel. Rather, appellant claims on appeal for the first time that the trial court should have *sua sponte* stopped the proceedings and conducted a competency hearing.

5. If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial. Tex. Code Crim.P.Ann. § 46.02, sec. 2(b). The sentencing phase of a criminal trial is a crucial part of "the trial" enumerated in sec. 2(b). *Casey v. State*, 924 S.W.2d 946, 949 (Tex.Crim.App.1996).

6. Appellant argues in a supplemental brief that the abuse of discretion standard is no longer applicable because of amendments to Art. 46.02 that lessen the quantum of information required to necessitate the impaneling, by a trial judge, of a competency jury. It is true that the old statute required the issue to be raised by "competent testimony," while the current statute only requires that it be brought to the trial judge's attention from "any source." But this only effectuates a change in the quantum of information necessary to raise the issue in the trial court. It does not change how an appellate court reviews a trial court's decision on appeal, and appellant cites no case to the contrary nor do we find one. If the appellate standard of review changed every time the legislature changed the quantum of proof in a statute, our appellate review jurisprudence would be hopelessly unpredictable.

7. The test of legal competence to stand trial is whether the defendant has the present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. Art. 46.02, sec. 1(a).

Dr. Schroeder, who examined appellant[8] and concluded that he was competent to stand trial, and further set aside the opinion of appellant's trial counsel who stated that appellant was legally competent to stand trial. At best this seems incongruous—at worst it makes no sense. What the trial court had to consider that at least tended toward showing incompetence, immediately prior to sentencing, was a report by Dr. Schroeder that appellant had a "level of anxiety, a reduced capacity for close relationships, perceptual distortions and eccentricities of behavior." But Dr. Schroeder concluded her report by opining that appellant was currently competent to stand trial. It is difficult to understand how a trial judge can separate a finding of a mental disease or defect from a finding that a defendant is competent to stand trial. So rather than interpret the holding in *Sisco* to literally require a trial judge to ignore such a finding, we believe that, at least as to Schroeder's report, while there was evidence of a mental disease or defect, there was no evidence of *statutory* incompetence to stand trial.[9]

As to trial counsel, his observations were similar to Schroeder's. He stated on the record that he personally thought appellant could benefit from psychiatric help, but he further opined that appellant was competent to stand trial. He specifically stated that appellant knew what was happening and was able to assist in his defense by communicating with counsel.

The only other factors that were before the judge[10] were statements by relatives of the appellant that were appended to the presentence report. A written statement by appellant's grandfather detailed some bizarre behavior by appellant, but none of it was at or about the time of the offense on trial. In fact, the most detailed event that the grandfather chronicled occurred more than two years before the offense in question. There was nothing reported that was more recent to the commission of the offense.

The most detailed evidence of bizarre behavior was presented in a hearing on a motion for new trial. At that hearing, a Dr. Peel, a psychiatrist, testified that appellant was not competent to stand trial because of mental illness. Appellant's mother also provided evidence of bizarre and aberrant behavior by appellant, although she was not able to provide any recent information. None of this evidence was heard by the trial court prior to sentencing, and there is no caselaw cited by appellant nor found by this court that interprets the "during the trial" clause of Art. 46.02, sec. 2(b) to encompass evidence of incompetence presented for the first time at a hearing on a motion for new trial.

In summary, although there was ample evidence in the record that appellant was suffering from a mental disease or defect, there was not evidence presented "during the trial" to raise a bona fide doubt as to appellant's competence to stand trial. We find that the trial court did not abuse his discretion in failing to *sua sponte* impanel a jury to determine competence.[11] Point of error two is overruled.

In his third point of error, appellant claims that he received ineffective assistance of trial counsel in the following particulars: 1) trial counsel failed to conduct an independent investigation of the facts; 2) counsel failed to raise the issue of competency to stand trial; 3) failed to adequately explain punishment options to appellant and 4) failed to object to

---

8. Dr. Schroeder's examination of appellant was part of a routine pre-sentence report ordered by the trial court and assembled by the probation officer.

9. There might well have been enough aberrant behavior chronicled in the report to have aided in the presentation of an insanity defense, but that issue is not before us.

10. There were several outbursts by the appellant during the trial to which only the trial court could assign any weight.

11. Appellant complains in a supplemental brief that since the trial court did not know that he could impanel a competency jury *sua sponte*, he could not have made a conscious decision during trial that such was not called for, and therefore, the abuse of discretion standard does not apply. But even if we assume *arguendo* that the trial court did not know the law, we have determined that there was no evidence before the judge that would have created a bona fide doubt that appellant was statutorily incompetent.

the proffer by the state of inadmissible extraneous offenses.

## Applicable Law

The standard for determining whether a defendant has been rendered ineffective assistance of counsel was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court explained that a defendant making an ineffective assistance of counsel claim must show: 1) that his counsel's assistance was deficient; and 2) that but for his counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68.[12] Under the *Strickland* test the appellant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

Additionally, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Jackson*, 877 S.W.2d at 771. A full inquiry into the strategy or tactics of counsel should be made only if from all appearances after trial, there is no plausible basis in strategy or tactics for his actions. *Newsome v. State*, 703 S.W.2d 750, 755 (Tex.App.— Houston [14th Dist.] 1985, no pet.). Simply stated this means if there is any basis for trial strategy to have been a reason for trial counsel's action, then further inquiry is improper. *Id.*

■ A strong presumption exists that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Martinez v. State*, 675 S.W.2d 573, 575 (Tex.

App.—San Antonio 1984, no pet.). Thus a defendant must show that his trial counsel's representation was unreasonable under prevailing professional norms and was not sound trial strategy thereby causing counsel's representation to fall outside the range of professionally competent assistance. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992).

## Application of Law to Facts

■ A hearing was held by the trial court on appellant's motion for new trial. At the hearing, appellant's trial counsel, Hernandez, was called as a witness by appellate counsel for appellant, ostensibly so that appellant could sustain his burden of proof on the ineffectiveness of trial counsel. We will discuss the claims seriatim:

1. **failure to investigate facts and interview witnesses**–Hernandez testified that the State, in his judgment, had a weak circumstantial case. None of the three witnesses could even say if a man or woman was driving the S 10 pickup—much less the appellant. And although one witness secured a license plate number, the letters and/or numbers were not in the order that actually appeared on the S 10 plates. Hernandez did not interview these witnesses because he did not want to "jog" their memories, i.e., prompt them in such a way that they might decide they could identify appellant. So he made a conscious decision not to interview them. Hernandez testified: "We had a defense which we could have presented. However, we decided that the evidence that the State had could not prove that he (appellant) was the person who did it and we went with that." The State offered no ballistics evidence because one of the two bullets fired was never found

---

12. The Court of Criminal Appeals adopted the *Strickland* standard in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). As appellant points out, a different standard applies for resolving ineffective counsel claims at the penalty phase of a bifurcated, non-capital case. In *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App., 1987), the Court of Criminal Appeals held the second prong of *Strickland* did not apply to the punishment phase of a noncapital trial. That court held that the *Duffy* standard of "counsel reasonably likely to render and rendering reasonably effective assistance" applied to such phase. *Id.; see also Ex parte Duffy*, 607 S.W.2d 507, 514, n. 14 (Tex.Crim.App., 1980).

and the second was lodged in the victim and could not be removed because of danger to the victim. There was apparently some consideration given to self-defense, but because of the total absence of any motivation for two carloads of total strangers shooting at each other on the interstate, the course chosen by Hernandez was reasonable, as was his decision not to interview the state's witnesses. None of Hernandez's testimony was rebutted. This was a reasonable strategy and thus appellant has failed to sustain his burden required by the first prong of *Strickland.*

2.  **failure to raise incompetency**–Hernandez testified that he realized that appellant had some mental problems, but that appellant was able to understand and assist him in the preparation and trial of the case, and that appellant fully understood the proceedings against him. Hernandez appeared to be aware of the possibility of an insanity defense, but he and appellant agreed upon the course that Hernandez ultimately followed. Dr. Schroeder's report, which was offered *during* trial and not after-the-fact in a motion for new trial hearing, echoed Hernandez's opinion—that appellant had some mental disease or defect, but was legally competent to stand trial. Appellant has not demonstrated by a preponderance of the evidence that counsel was ineffective for failing to raise competency. *See Strickland.*

3.  **failed to correctly apprise appellant of the pitfalls of court sentencing**– Appellant filed a sworn affidavit in the transcript that Hernandez never advised him that the trial court could not grant probation for attempted murder. Hernandez testified at the new trial hearing that he advised appellant of the provisions of TEX.CODE CRIM.PROC. ANN. art. 42.12, sec. 3g (Vernon Supp. 1997), but that appellant made the choice to have the trial court assess

punishment, affirmatively eschewing the jury. Appellant cites the pretrial filing of an application for probation as proof that Hernandez misunderstood or did not know the law. However the application for probation contains several cause numbers, including the instant case—there having been several cases filed on appellant arising from this transaction. Appellant has failed to bring forward any proof of what offenses were represented in this application, or whether the application was meant to cover all or only part of the offenses enumerated thereon. Thus we are left with essentially a swearing match between appellant and Hernandez. Since the trial court implicitly resolved this issue in favor of Hernandez by denying the motion for new trial, appellant has failed to sustain his burden by a preponderance. *See Strickland,* 466 U.S. at 693–694, 104 S.Ct. at 2067–2068, 80 L.Ed.2d at 697–698. *Ortiz v. State,* 866 S.W.2d 312, 314 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

4.  **failure to object to extraneous offenses**–Appellant claims that Hernandez failed to object to the introduction by the State of extraneous offenses, i.e., the carrying of a weapon by appellant and the firing of that weapon on or near the campus of Texas Lutheran College. The fact that appellant was carrying the weapon on his person when he was arrested did get before the jury, but only after Hernandez objected on relevancy grounds and on the ground that it was an extraneous offense. The record reflects that the incident involving the discharge of the 9 millimeter weapon was objected to by Hernandez out of the jury's presence. What did get before the jury was testimony by Officer Sikes that he was dispatched to the woman's dorm because of some "trouble," but there was no elaboration as to what the trouble was.[13] Again, appellant has failed

---

**13.** The only other elaboration by Sikes on what trouble existed was a comment by appellant to Sikes that "he (appellant) was doing my job and

to sustain his burden of proof by a preponderance.

Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.

he was shooting peeping toms.'' This testimony was offered outside the jury's presence.