**Nakeesha DURGAN, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–04–501 CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Jan. 4, 2008.

Opinion Delivered June 25, 2008.

Albert J. Charanza Jr., Charanza Law Office, P.C., Lufkin, for Appellant.

Clyde Herrington, Dist. Atty., Jennifer B. Collins, Asst. Dist. Atty., Lufkin, for State.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This cause is before us on remand for consideration of the merits of Nakeesha Durgan's incompetency claim. Durgan had contended that she was incompetent when the trial court revoked her deferred-adjudication community supervision and sentenced her to ten years' imprisonment, and we dismissed her appeal for lack of jurisdiction. *See Durgan v. State,* 192 S.W.3d 884, 887 (Tex.App.-Beaumont 2006), *rev'd,* 240 S.W.3d 875 (Tex.Crim. App.2007). Determining that we had jurisdiction to consider the issue, the Court of Criminal Appeals reversed and remanded. *See Durgan v. State,* 240 S.W.3d 875, 878 (Tex.Crim.App.2007). Because we find that the trial court erred, we abate and remand this cause to the trial court for a determination of whether Durgan was incompetent at the time of her adjudication hearing.

## I. BACKGROUND

In October 2001, Durgan pled guilty to delivery of less than one gram of cocaine in a drug-free zone, i.e., within 1,000 feet of the premises of an elementary school. Pursuant to a plea agreement, the trial court deferred Durgan's adjudication and placed her on five years' community supervision. Approximately two years later, the State filed a motion to adjudicate alleging that Durgan had violated her community supervision. As part of an order imposing additional terms of supervision, the trial court ordered Durgan to reside in a "Special Needs Substance Abuse Felony

Punishment Facility" for a period not to exceed one year and continued her on supervision. In 2004, the State filed a second motion to adjudicate and alleged that Durgan had failed to attend and successfully complete the facility's program. The trial court found that Durgan had violated the terms and conditions of her community supervision as alleged, found her guilty, and sentenced her to ten years' imprisonment.

Durgan filed a motion for reconsideration, or in the alternative, a new trial. Her motion asserted that the judgment and sentence should be set aside and a new trial granted because new evidence showing Durgan's mental and behavioral problems had been discovered since trial. After a hearing, the trial court denied the motion.

## II. DURGAN'S ISSUE

On appeal, Durgan contends that the trial court erred in not having her evaluated to determine if she was incompetent to stand trial for a revocation hearing. Durgan contends that the trial court, sua sponte, should have ordered an inquiry into whether she was incompetent. Durgan argues that the new evidence about her "history of mental and behavioral problems" raised an issue about whether she was competent when the trial court heard the motion to adjudicate her guilt. *See* Tex.Code Crim. Proc. Ann. art. 46B.003 (Vernon 2006).

Durgan first raised incompetency in her motion for new trial. The State did not argue before us or at the new trial hearing that the evidence presented by Durgan was not new. Further, the record before us shows that the documents supporting Durgan's claim became a part of the clerk's record on January 7, 2005, the same day that the documents were admitted into evidence at the new trial hearing.

## III. BONA FIDE DOUBT

 The Texas Court of Criminal Appeals recently reiterated that trial courts use the "bona fide doubt" standard in determining whether the court is required to sua sponte order a defendant's evaluation for mental incompetency. *Fuller v. State*, 253 S.W.3d 220, 227–28 (Tex.Crim.App. 2008) (citing *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)); *see also* Tex.Code Crim. Proc. Ann. art. 46B.004–.005 (Vernon 2006). A defendant is incompetent to stand trial if he does not have: "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." Tex.Code Crim. Proc. Ann. art. 46B.003(a). "If any evidence that suggests the defendant may be incompetent to stand trial comes to the trial court's attention, the trial court shall *sua sponte* 'suggest that the defendant may be incompetent to stand trial' and then 'determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.'" *Fuller*, 253 S.W.3d at 227–28 (quoting Tex.Code Crim. Proc. Ann. art. 46B.004 (b), (c)).

 The *Fuller* Court defined a "bona fide doubt" as "'a real doubt in the judge's mind as to the defendant's competency.'" *Id.* (quoting *Alcott v. State*, 51 S.W.3d 596, 599, n. 10 (Tex.Crim.App.2001)). "Evidence raising a bona fide doubt 'need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence.'" *Id.* Rather, the evidence creates bona fide doubt when "it shows 'recent severe mental illness, *at least moderate retardation,* or truly bizarre acts by the defendant.'" *Id.* (quot-

ing *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App.2003)) (emphasis added).

Thus, *Fuller* resolves recent questions about applying the bona fide doubt standard to incompetency issues raised during trial.[1] *Id.* at 228–29 (explaining that none of defendant's evidence presented during trial created a bona fide doubt about incompetence). *Fuller*, however, does not address whether that standard also applies when competency is raised for the first time in a motion for new trial, as Durgan did here. *See Fuller*, 253 S.W.3d at 227–29.

## IV. TRADITIONAL STANDARD: MOTION FOR NEW TRIAL

Several appellate courts have recognized that a convicted person may challenge her competency to stand trial in a motion for new trial. *See Godoy v. State*, 122 S.W.3d 315, 320 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (motion to revoke community supervision); *Purchase v. State*, 84 S.W.3d 696, 699 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (jury conviction); *Edwards v. State*, 993 S.W.2d 171, 175 (Tex.App.-El Paso 1999, pet. ref'd) (guilty

plea); *Brown v. State*, 960 S.W.2d 772, 778 (Tex.App.-Dallas 1997, pet. ref'd) (guilty plea). Generally, when a defendant raises incompetency in a motion for new trial, the trial court does not determine if the evidence raises a bona fide doubt about competence. *See Purchase*, 84 S.W.3d at 699; *Brown*, 960 S.W.2d at 778. Rather, the trial court "applies the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence." *Purchase*, 84 S.W.3d at 699 (citing *Edwards*, 993 S.W.2d at 176; *Brown*, 960 S.W.2d at 778). The appellate court reviews the trial court's decision under an abuse of discretion standard and reverses only if the court makes an unreasonable or arbitrary decision. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995); *Purchase*, 84 S.W.3d at 699.

But, *Godoy, Purchase, Edwards,* and *Brown*, all of which applied the traditional motion for new trial standard, were decided before the 2003 changes in the incompetency statute became effective in 2004.[2]

1. In 2007, the San Antonio Court of Appeals held that statutory changes enacted by the Texas Legislature in 2003 abrogated the case law requirement that evidence raising a "bona fide doubt" was necessary to trigger a competency inquiry. *Greene v. State*, 225 S.W.3d 324, 329, n. 3 (Tex.App.-San Antonio 2007, no pet. h.). The *Greene* Court concluded that the new statutory standard required less evidence than the bona fide doubt standard. *Id.* In doing so, *Greene* compared the current statute, 46B.004(b), and its use of the terms "suggest" and "suggestion" with the prior statute, art. 46.02, § 2(b), which did not use those terms. *Id.; compare* TEX.CODE CRIM. PROC. ANN. art. 46B.004(b) (Vernon 2006), *and* Act of May 29, 1975, 64th Leg. R.S., ch. 415, 1975 Tex. Gen. Laws 1095–96, *repealed by* Acts of April 30, 2003, 78th Leg. R.S., ch. 35 § 15, 2003 Tex. Gen. Laws 72.

Subsequent to the 2003 statutory change, however, at least two published opinions ap-

plied the bona fide doubt standard. *See Salahud–din v. State*, 206 S.W.3d 203, 208 (Tex. App.-Corpus Christi 2006, pet. ref'd) (collecting unpublished cases that applied the standard after the 2003 revisions); *LaHood v. State*, 171 S.W.3d 613, 618 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

2. Since the 2003 statutory changes, however, at least three courts have applied the traditional motion for new trial standard to incompetency issues raised in the motion. *See Beltran v. State*, 2007 WL 4216541, at *2 (Tex. App.-Tyler 2007, no pet.) (not designated for publication); *Hill v. State*, 2007 WL 866476, at *8 (Tex.App.-Fort Worth 2007, pet. ref'd), *cert. denied*, — U.S. ——, 128 S.Ct. 1267, 170 L.Ed.2d 99 (2008); *De La Cruz v. State*, 2005 WL 564065, at *6 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (not designated for publication).

See *Godoy*, 122 S.W.3d at 315 (2003); *Purchase*, 84 S.W.3d at 696 (2002); *Edwards*, 993 S.W.2d at 171 (1999); *Brown*, 960 S.W.2d at 772 (1997). The former statute provided: "If *during the trial* evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial." Act of May 29, 1975, 64th Leg. R.S., ch. 415, 1975 Tex. Gen. Laws 1095–96, *repealed by* Acts of April 30, 2003, 78th Leg. R.S., ch. 35 § 15, 2003 Tex. Gen. Laws 72 (emphasis added). In considering the former statute's language, some courts have found that a hearing on a motion for new trial was not "during trial." *See Oku v. State*, 21 S.W.3d 689, 691–92 (Tex.App.-Austin 2000, no pet.); *Taylor v. State*, 948 S.W.2d 827, 832 (Tex.App.-San Antonio 1997, pet. ref'd); *see also* 42 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 26.81 (2d ed. 2001).

Under the former statute, some commentators argued for an expanded reading of "during trial":

> The general tendency to read the term trial broadly makes a great deal of sense. The Code no longer has any provision for inquiry into impairment after trial but where the defendant is not imprisoned. *Yet persons being so processed judicially are obviously entitled under federal due process standards to inquiry into competency if the facts raise the issue.* Only if "during the trial" is construed broadly does article 46.02 properly provide for this.

Dix & Dawson, *supra*, § 26.81 (emphasis added).

After the 2003 revisions deleted the "during trial" requirement,[3] the commentators concluded: "The 2003 revision eliminated the troublesome language in the predecessor statute. Now, the court's duty to raise or inquire into competency is unrestricted by any such terminology." Dix & Dawson, *supra*, § 26.81 (Supp. 2007). The elimination of the "troublesome language," however, raises certain questions. With no requirement that a court's inquiry be confined to "during trial," should a post-trial inquiry be conducted under the bona fide doubt standard or the traditional motion for new trial standard? *Durgan* hints that the Court of Criminal Appeals might, with respect to an incompetency inquiry, extend a bona fide doubt standard to the motion for new trial stage of the proceedings.

The *Durgan* Court explained that an assertion about a defendant's incompetency at the time of an adjudication hearing "raises a preliminary due-process issue that must be resolved before the adjudica-

---

3. The current statute, article 46B.004 (Raising Issue of Incompetency to Stand Trial) provides in part:

 (a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

 (b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

 (c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

 (d) If the court determines there is evidence to support a finding of incompetency, the court, except as provided by Subsection (e) and Article 46B.005(d), shall stay all other proceedings in the case.

 Tex.Code Crim. Proc. Ann. art. 46B.004.

tion process may begin." *Durgan,* 240 S.W.3d 875 at 878 (citing *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)). In addition, the Court pointed to facts presented by witnesses at Durgan's new trial hearing and stated that some of their testimony "supported a conclusion of mild to moderate mental retardation for appellant." *Durgan,* 240 S.W.3d at 876. Moderate retardation, of course, raises bona fide doubt. *See Fuller,* 253 S.W.3d at 227–28. Thus, *Durgan* could be interpreted as suggesting that the bona fide doubt standard should be used when a defendant raises incompetency in a motion for new trial.

In this case, however, we need not determine whether bona fide doubt is the proper standard for the trial court to use when a trial court evaluates an incompetency question post-trial. With respect to the facts before the trial court in this case, an existing procedure allows us to address any due process concerns that may be presented by the post-trial evidence. *See Brown v. State,* 960 S.W.2d at 775.

## V. CONSIDERATION OF POST TRIAL EVIDENCE

 In *Brown,* the Dallas Court of Appeals recognized that, under certain circumstances, an appellate court may consider post-trial evidence in determining if the trial court erred by not conducting an incompetency inquiry during trial. *Id.* This circumstance arises "when evidence presented at a motion for new trial hearing serves to explain or define evidence of incompetence that was already before the court during trial." *Id.* at 776 (citing *Morrison v. State,* 795 S.W.2d 276, 278–80 (Tex.App.Houston [14th Dist.] 1990, no pet.)) (considering post-trial evidence in remanding cause to trial court for jury determination of competency); *see also Oku v. State,* 21 S.W.3d at 691. As ex-

plained below, the *Brown* analysis is appropriate here because the significance of the trial evidence only becomes apparent when it is viewed in light of the post-trial evidence.

### A. Trial Evidence

Available to the court at the adjudication hearing were documents from the clerk's record and testimony suggesting that Durgan had some degree of mental incompetency. The documents included the following:

- The trial court's deferred adjudication order dated October 12, 2001, that included a community supervision requirement for Durgan to take all medication prescribed by the Burke Center Mental Health/ Mental Retardation facility or by her physician.

- An August 2003 violation report from Durgan's caseworker supervisor included the following notations regarding rehabilitative measures: (1) "Referral to Mentally Impaired Offender Caseload–Defendant has limited mental capacity"; and (2) "Burke Center M.H.M.R. Facility–Defendant has been a patient at various times."

- The State's first motion to adjudicate, filed in September 2003, listed the same "rehabilitative measures" contained in the August violation report.

- An additional probation term imposed on Durgan in September 2003 that ordered her sent to a "special needs" Substance Abuse Felony Punishment Facility (SAFPF) for no more than one year.

- A subsequent SAFPF progress report to the trial court stating that Durgan was "low functioning" but also was not making the effort to do what she was "capable of doing."

After Durgan pled "not true" to the allegation that she did not complete the SAFPF program, the trial court heard testimony from Marcie Anthony and Durgan. Anthony supervised offenders sent by the trial court to SAFPF, including Durgan. Anthony testified that Durgan was sent to a "special needs" SAFPF because she "has a low level of mental capability." Anthony further testified that Durgan was capable of completing the SAFPF program and that the "special needs" program was "geared" for offenders with her mental capabilities.

On direct examination, Durgan contended that she completed the SAFPF program and that she was not "kicked out" of the unit. She also testified that she did not know why she was back in court. When asked on cross-examination whether she thought the testimony about her misbehavior was "simply a big mistake," Durgan responded, "Yes, sir."

None of the evidence before the court at the adjudication hearing, however, raised questions about whether Durgan had "a recent severe mental illness," was "at least" moderately retarded, or had exhibited "truly bizarre" behavior. *See Fuller,* 253 S.W.3d at 227–28 (quoting *McDaniel,* 98 S.W.3d at 710).

■ As to the documents before the trial court during the trial, they showed that Durgan had "limited mental capacity," was "low functioning," was referred to as a "mentally impaired caseload," was required to take medication prescribed by an MHMR facility, and was sent to a special needs SAFPF. Nothing shows that either the MHMR facility, the supervisor handling the caseload, or the special needs SAFPF dealt only with *moderately* retarded individuals, as opposed to those who have *mild* retardation. As noted in *Briseno,* mental retardation includes several categories and most persons who are classified as mentally retarded are mildly mentally retarded, rather than moderately mentally retarded. *Ex parte Briseno,* 135 S.W.3d 1, 5–6 (Tex.Crim.App.2004).[4] Thus, evidence that a defendant is mentally retarded is not evidence of "at least" moderate mental retardation, the evidence of which is generally sufficient to create a bona fide doubt about a defendant's incompetence to stand trial. *See Fuller,* 253 S.W.3d at 227–28.

As to the witnesses who testified at trial, Anthony's testimony showed that Durgan had a low level of mental capability and that she participated in the special needs SAFPF. Durgan testified that she completed the SAFPF program when she had not, and she contended that she did not understand why she was at the hearing. This testimony could reasonably be viewed

---

**4.** In *Briseno,* the Court of Criminal Appeals explained that

"mental retardation" encompasses a large and diverse population suffering from some form of mental disability. The DSM–IV categorizes the mentally retarded into four subcategories: mildly mentally retarded, moderately mentally retarded, severely mentally retarded, and profoundly mentally retarded. Some 85% of those officially categorized as mentally retarded fall into the highest group, those mildly mentally retarded, but "mental retardation is not necessarily a lifelong disorder." The functioning level of those who are mildly mentally re-

tarded is likely to improve with supplemental social services and assistance. It is thus understandable that those in the mental health profession should define mental retardation broadly to provide an adequate safety net for those who are at the margin and might well become mentally-unimpaired citizens if given additional social services support.

*Ex parte Briseno,* 135 S.W.3d 1, 5–6 (Tex. Crim.App.2004) (citing AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Text Revision, 4th ed. 2000) (DSM–IV) 41–42, 44).

as being consistent with her belief that a "big mistake" had occurred rather than as showing she was unable to understand the proceedings. Further, when the trial court asked her directly about whether she understood the State's contentions and the possible consequences, she replied, "Yes." Thus, none of the hearing evidence, taken by itself or together, shows that Durgan had difficulties communicating with her attorneys or was unable to understand the proceedings. In fact, neither of the attorneys who represented her before the trial court ever complained that her mental limitations made her unable to consult with them or that she could not understand the proceedings. *Compare Moore v. State*, 999 S.W.2d 385, 393–94 (Tex.Crim.App. 1999).

Thus, the evidence before the court at the adjudication hearing was insufficient to require the court to order Durgan's examination to determine if she was mentally incompetent. Nevertheless, as explained below, the post-trial evidence assists in a better understanding of the evidence previously presented to the trial court.

### B. Post–Trial Evidence

Under *Brown*, we may consider whether the evidence presented at the motion for new trial hearing "serves to explain or define evidence of incompetence that was already before the court during trial." *Brown*, 960 S.W.2d at 776. At the hearing on Durgan's motion for new trial, the court heard the testimony of several witnesses. The trial court also admitted into evidence various records, all of which were part of an evaluation of Durgan to determine whether she qualified for vocational training through a county program.

### Records

The records consisted of Durgan's social history, a medical/psychiatric assessment, a psychological assessment, a developmental assessment, and a summary containing the reviewing team's recommendations. The Court of Criminal Appeals noted that all of these records "included an introductory heading of 'Determination of Mental Retardation.'" *Durgan*, 240 S.W.3d at 876.

Most, but not all, of these records are consistent with a diagnosis of mild mental retardation. Durgan's records included psychological assessments and included findings by two psychologists. One concluded that generally she was performing at or below third grade level in reading, spelling, and arithmetic. The other psychologist found that Durgan's "performance on the current assessment indicated an overall level of intellectual functioning within the range of Mild Mental Retardation...." However, Durgan "appeared to be functioning adaptively within the range of Moderate Mental Retardation with the potential of functioning within the range of Moderate Mental Retardation." The psychologists' records reflect that Durgan's performance on the Vineland Adaptive Behavior Scale (VABS) indicated "an overall level of adaptive functioning within the range of Moderate Mental Retardation." The findings further noted that Durgan appeared to "possess all of her basic self-help skills such as independent bathing, grooming ..." but had "significant related limitations" in "adaptive skill areas," namely "social skills, self-direction, and functional academics (Mental Retardation, 9th Edition, AAMR, 1992)."

### Witnesses

Teresa Anderson reviewed Durgan's records but did not meet or interview her. Anderson testified that she was the director of special education programs at Hudson School, had a master's degree in special education, and was certified as an

educational diagnostician. Anderson stated that Durgan's overall scores were in the mild range of mental retardation but that Durgan had several scores placing her in the moderate range. Anderson explained that a person with mild retardation would be "likely to need ongoing supervision and support and would likely be someone who requires specialized services in order to achieve in school and after school." For a person with moderate retardation, "more services and support would be necessary, and closer supervision would be necessary and probably a lot more practice in trying to master just basic daily living skills."

Anderson further asserted: "It's generally accepted that persons with mild mental retardation will academically sort of plateau at the sixth-grade level of academic skills, school-based activities. Of course, that's not to say all of them reach that level, and some of them maybe go above that; but that's sort of generally accepted in most cases." Anderson noted that Durgan was below the third-grade level at the time the tests were given.

Anderson also testified that it "would be real difficult" for a person with Durgan's scores to have much insight. Anderson opined that a person with Durgan's scores would not be smart enough to anticipate consequences and that she would be easily influenced. According to Anderson, others could "influence [Durgan] into actions that ordinarily" she would not take. As to typical thought processes, such a person would be considering what was "happening immediately at any given time, without a lot of ability to consider impact . . ." or what might "be the next thing that may happen as a result of actions." Anderson explained that Durgan functions at a significantly lower level intellectually than other persons.

The trial court asked Anderson whether she was qualified to give an opinion as to whether Durgan "would know right from wrong in terms of securing something that was legal, as distinguished from that which is illegal?" Anderson stated that she could not make that determination. No one, however, asked Anderson whether Durgan, at the time of trial, would have had "sufficient present ability to consult with" her lawyer "with a reasonable degree of rational understanding" or whether Durgan would have had "a rational as well as factual understanding of the proceedings." *See* TEX.CODE CRIM. PROC. ANN. art. 46B.003.

Mark Johnson, Durgan's cousin, testified at the hearing. He stated that he "grew up" with Durgan in Lufkin and that they were reared in the same home. He said that he was familiar with Durgan's mental capacities and that others, such as a drug dealer, had taken advantage of Durgan. Johnson stated that Durgan did "not really" know the difference between right and wrong.

Durgan also testified at the hearing on her motion for new trial. When asked whether she knew why she was in court that day, she said: "No, sir." When asked what kind of trial she had in November 2004, she stated: "It's hard to say." She did not remember when she graduated from high school, but she agreed it would have been when she was 17 or 18. She also contended that she completed the Substance Abuse Felony Punishment Facility ("SAFPF") program.

The State again called Durgan's supervisor, Marcie Anthony, the SAFPF officer for Angelina County Adult Probation Department. Anthony explained that Durgan was sentenced to a special needs facility because of "her low mental capacity." Anthony also testified said Durgan "was a behavioral problem" in the program. She would either refuse to go to group sessions or would get up and walk out. According to Anthony, Durgan cursed at the staff and

her peers and threatened them with physical violence.

### Analysis

At the new trial hearing, Durgan presented some evidence indicating that she has moderate mental retardation. Durgan's psychological assessment stated that "[s]he appeared to be functioning adaptively within the range of Moderate Mental Retardation with the potential of functioning within the range of Moderate Mental Retardation." This professional suggestion of moderate retardation presents a different prism for viewing the trial evidence.

At the adjudication hearing, Durgan testified that she had completed the SAFPF program, when in fact she had not. Further, she stated that she did not know why she was back in court, perhaps indicating a lack of understanding about the proceedings' nature. According to the post-trial expert testimony presented by Teresa Anderson, a person with Durgan's test scores would have little insight and would be unable to anticipate consequences. Thus, the post-trial evidence helps to explain why Durgan could have such misconceptions and misunderstandings. Lacking insight and the ability to anticipate consequences, Durgan may not have understood that failure to complete the SAFPF program constituted a violation of her community supervision. She may not have understood the actual requirements for completing the SAFPF program and erroneously thought she had completed it. She may not have understood that the reason she was in court was for the trial judge to determine whether she had violated her supervision terms, and she may not have understood that a consequence of violating her supervision terms was imprisonment.

The State does not challenge the credibility of the records that arguably support a conclusion that Durgan has moderate mental retardation. Further, the State does not challenge Anderson's testimony about the possible effects of moderate mental retardation.

Thus, in the unusual circumstances presented in this case, we find the post-trial evidence explains the evidence that was before the court during trial. Therefore, we consider the post-trial evidence in evaluating whether the trial court erroneously failed to conclude that "some evidence" existed under article 46B.004(c) "that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *see* *Brown*, 960 S.W.2d at 776. Such evidence, of course, would trigger the requirements for a determination of whether Durgan was incompetent. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.005. Based on the trial evidence and the post-trial evidence as examined above, we conclude that the trial court erred by failing to determine that "some evidence" existed of Durgan's incompetence; as a result the trial court erred in failing to order an examination of Durgan under article 46B.005. Therefore, we sustain Durgan's sole issue before us on remand.

### VI. CONCLUSION

Having sustained Durgan's sole issue, we abate this appeal and remand this cause to the trial court for a retrospective determination under article 46B.005 of whether Durgan was incompetent at the time of her adjudication hearing on November 2, 2004, if that can be determined after the passage of over three and one-half years. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.004(c); *Casey v. State*, 924 S.W.2d 946, 949 (Tex.Crim.App.1996); *Hawkins v. State*, 660 S.W.2d 65, 85 (Tex.Crim.App.

1983); *Brown v. State,* 871 S.W.2d 852, 860 (Tex.App.-Corpus Christi 1994, pet. ref'd). The trial court shall forward its determination, or its findings supporting its inability to make a determination, via a supplemental appellate record within ninety days of the date of this order, and this appeal will be reinstated upon receipt of the supplemental record.

ABATED AND REMANDED.