COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-285-CR

 

 

HENRY SPARKS                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








Appellant Henry Sparks
appeals the revocation of his deferred adjudication community supervision.  In three points, he complains that the trial
court lacked jurisdiction to revoke his community supervision, that the trial
court erred by adjudicating his guilt and revoking his community supervision on
the basis that he failed to pay various fines and restitution payments, and
that the trial court should have sua sponte reviewed his mental condition and
determined whether he was competent at the time of the adjudication
hearing.  We will affirm.

II. Background 

Sparks entered into a
negotiated plea agreement with the State on a charge of robbery, and on October
20, 2006, the 367th District Court of Denton County, with the Honorable Lee
Gabriel presiding, sentenced Sparks to eight years= deferred adjudication community supervision and fined Sparks
$1,000.  On November 16, 2006, the State
filed its first motion to proceed with an adjudication of guilt in the 367th
District Court.  The State later withdrew
this motion.

On April 5, 2007, following
an incident in which Sparks punched a hole in the wall at the courthouse during
his brother=s trialCalso in the 367th District CourtCthe State filed another motion to proceed with adjudication.  The State amended the motion later that same
day alleging that Sparks had violated eight terms and conditions of the
community supervision, including committing the offense of criminal mischief
and failing to pay the $1,000 fine and other costs to the court.








Additionally, on April 5,
2007, the Honorable Bruce McFarling, an administrative judge, signed an order
transferring the suit from the 367th District Court of Denton County to the
16th District Court of Denton County.  On
July 19 and 20, 2007, the Honorable Carmen Rivera-Worley of the 16th District
Court heard the motion to adjudicate, found the allegations to be true,
adjudicated Sparks=s guilt, and
sentenced Sparks to five years= confinement. This appeal followed.

III. Revocation of Community Supervision

A.     Transfer Order

In his first point, Sparks
argues that the 16th District Court lacked jurisdiction to revoke his community
supervision because the 367th District Court initially sentenced him after he
pleaded guilty to the robbery offense. 
Sparks bases his argument on section 10(a) of the Texas Code of Criminal
Procedure, which states that only the court in which the defendant was tried
may grant community supervision, impose conditions, revoke the community
supervision, or discharge the defendant, unless the judge has transferred
jurisdiction of the case to another court with the latter=s consent.  See Tex Code
Crim. Proc. Ann. art. 42.12, ' 10(a) (Vernon Supp. 2008).








The record shows that Judge
McFarling signed an order transferring the case to the 16th District Court, but
nothing in the record shows that Judge Rivera-Worley signed or expressly
consented to the transfer.  Sparks argues
that the administrative judge did not have the authority to transfer the case
and that only Judge Gabriel of the 367th District Court could have transferred
the case to the 16th District Court with Judge Rivera-Worley=s consent.








We note that regardless of
the propriety of the transfer order, Sparks at no time objected to or raised
any question about the transfer order at the adjudication hearing.  Accordingly, we hold that Sparks failed to preserve
his complaint that the order did not transfer jurisdiction to the 16th District
Court.  See Stephenson v. State,
500 S.W.2d 855, 857 (Tex. Crim. App. 1973) (holding that the appellant failed
to preserve error regarding the jurisdiction of the trial court to revoke his
probation when he raised the issue of the propriety of the transfer order,
which contained a clerical error, for the first time on appeal); Madrid v.
State, 751 S.W.2d 225, 225 (Tex. App.CEl Paso 1988, writ ref=d) (citing Stephenson and holding that the appellant failed to
preserve error regarding his complaint that the El Paso Criminal Law Magistrate
revoked his community supervision when the 120th District Court originally
placed him on community supervision); see also Lemasurier v. State, 91
S.W.3d 897, 899B90 (Tex.
App.CFort Worth 2002, pet. ref=d) (holding that in a case in which the indictment was returned in a
court different from the one in which the trial was conducted, the fact that no
transfer order was in the record was a procedural matter, not jurisdictional,
and was therefore subject to preservation of error requirements).  We overrule Sparks=s first point.

B.     Competency

In his third point, Sparks
argues in part that the trial court should have sua sponte reviewed his mental
condition and determined whether he was competent at the time of the
adjudication hearing.

Where the evidence raises a
bona fide doubt as to a defendant=s competence to stand trial, the court is required on its own motion
to conduct  a sanity hearing.  Fuller v. State, 253 S.W.3d 220, 228
(Tex. Crim. App. 2008) (citing Pate v. Robinson, 383 U.S. 375, 385, 86
S. Ct. 836, 842 (1966).  A defendant is
incompetent to stand trial if he does not have sufficient present ability to
consult with his lawyer with a reasonable degree of rational understanding or a
rational as well as factual understanding of the proceedings against him.  Id. 
A bona fide doubt is a real doubt in the judge=s mind as to the defendant=s competency.  Id.  Evidence raising a bona fide doubt need not
be sufficient to support a finding of incompetence and is qualitatively
different from such evidence.  Id.  Evidence is sufficient to create a bona fide
doubt if it shows recent severe mental illness, at least moderate retardation,
or truly bizarre acts by the defendant.  Id.








Here, Sparks did not present
evidence to the trial court that raised a bona fide doubt that Sparks was
incompetent to stand trial.  In fact, the
evidence in the Clerk=s Record,
available to the trial court at the time of the adjudication hearing, supports
the opposite conclusion.  Before Sparks
pleaded guilty, Judge Gabriel appointed James G. Shupe, M.D., to evaluate
Sparks and determine if he was competent to stand trial.  Dr. Shupe concluded that even though Sparks
suffers from various mental disabilities, including psychotic disorder and
severe social stressors, in his medical opinion, Sparks was competent to stand
trial.  In his response to the State=s motion to adjudicate, Sparks attached a letter from Robert
Williamson, M.D., stating that Sparks suffers from depression ANOS@ and
paranoid personality.  Dr. Williamson did
not, however, make a determination regarding Sparks=s competency.  Sparks=s mother also testified that Sparks suffers from paranoia and that he
has had these issues since he was fourteen years old.  There was no additional evidence presented to
the trial court regarding Sparks=s competency.








In review of the record, we
cannot say that there was evidence presented to the trial court that created a
bona fide doubt that Sparks did not have a sufficient ability at the revocation
hearing to consult with his lawyer with a reasonable degree of rational
understanding or a rational as well as factual understanding of the proceedings
against him.  Most importantly, Dr. Shupe
opined that Sparks was competent, and the only event that might be viewed as
raising a bona fide doubt and that occurred after Dr. Shupe declared Sparks
competent to stand trial was the incident in which Sparks punched a hole in the
wall at the courthouse.  This behavior,
while unusual, is insufficient to raise a doubt as to whether he was
incompetent.  See Durgan v. State,
09-04-00501-CR, 2008 WL 2522241, at *5 (Tex. App.CBeaumont June 25, 2008 no pet.). 
Accordingly, we hold that the trial court was not required to evaluate
Sparks=s mental competency before the adjudication hearing.[2]

C.     Adjudication of Guilt and
Revocation of Community Supervision








In his second and third
points, Sparks argues that because he was indigent and could not find proper
employment, the trial court erred by adjudicating his guilt and revoking his
community supervision on the basis that he failed to pay various fines and
restitution payments.  Additionally,
Sparks argues that he did not knowingly agree to be bound by financial
obligations as a part of his community supervision.  However, because we conclude that the trial
court did not err by finding that Sparks committed the offense of criminal
mischief in violation of his community supervision, we need not determine
whether the trial court erred by finding that Sparks failed to pay the fines in
light of his alleged indigence or whether he knowingly entered into an
agreement to pay various financial obligations.

The first condition of Sparks=s community supervision required Sparks to commit no offense against
the laws of this State or any other state or of the United States.  On April 5, 2007, Sparks attended his brother=s trial for robbery in the 367th District Court.  Angered by the prosecutor=s argument during the trial, Sparks disrupted the court by yelling
that his brother had not used a gun during the alleged robbery.  Judge Gabriel asked that Sparks leave the
court room, and Sparks loudly exited the court room and struck the wall outside
the courtroom damaging the sheet rock. 
The facilities director for the courthouse testified at the hearing that
the hole in the wall cost $280.75 to repair.








The State need only prove by
a preponderance of the evidence that Sparks committed an offense in violation
of the terms of his community supervision. 
See Cobb v. State, 851 S.W.2d 871, 874 (Tex. Crim.
App.1993).  The offense of criminal
mischief requires proof that the person, without the effective consent of the
owner, intentionally or knowingly damages or destroys the tangible property of
the owner.  Tex. Penal Code Ann. ' 28.03(a)(1) (Vernon Supp. 2008). 
Additionally, the offense is raised to a Class B misdemeanor if the
amount of pecuniary loss is $50 or more but less than $500.  Id.
' 28.03(b)(2).

The State presented testimony
of the facilities director at the courthouse and of another individual, both of
whom witnessed Sparks punch a hole in the wall. 
Together, this testimony sufficiently demonstrated that Sparks intentionally
or knowingly damaged a wall in the courthouse without the consent of the owner,
resulting in damages in the range of a Class B misdemeanor.  Despite evidence in favor of a finding that
he committed the offense of criminal mischief, Sparks vaguely argues that
because of his mental conditions he did not have the necessary mens rea to
commit the offense.








Sparks cites Jackson v.
State to support his argument that his paranoia and other mental conditions
dealing with his inability to handle life Astressors@ negated
mens rea.  160 S.W.3d 568, 572 (Tex.
Crim. App. 2005).  Jackson,
however, does not support the argument that paranoia negates mens rea; rather,
it states that such mental conditions present evidence of an excuse for
a criminal offense.  Id. (stating
that the appellant=s paranoia
not only explained why he killed his brother but also made it more apparent
that he intended to cause serious bodily injury or death to his brother).  We agree with the reasoning in Jackson
and hold that Sparks=s mental
conditions did not negate mens rea and, at a minimum, provided only an excuse
for such aggressive behavior.  See
id.  Thus, because the State
proved by a preponderance of the evidence that Sparks committed the offense of
criminal mischief, the trial court did not err by adjudicating Sparks=s guilt and revoking his community supervision.  We overrule Sparks=s second and third points.

IV. Conclusion

Having overruled all of
Sparks=s points, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL: 
HOLMAN, J.; CAYCE, C.J.; and MCCOY, J.

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: 
September 11, 2008

 











[1]See Tex.
R. App. P. 47.4.





[2]Sparks
also argues in his third point that because of his mental condition, the trial
court should have placed him on the mental health caseload.  We will not address this claim as Sparks
failed to adequately brief the issue.  See
Tex. R. App. P. 38.1(h).