**Jeffrey Don BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–95–01491–CR to 05–95–01496–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 20, 1997.

Discretionary Review Refused
Feb. 11, 1998.

Robert Udashen, Dallas, for Appellant.

Sue Korioth, Asst. Dist. Atty., Dallas, for Appellee.

Before CHAPMAN, MORRIS and HANKINSON, JJ.

## OPINION

HANKINSON, Justice.

Appellant Jeffrey Don Brown challenges the manner in which the trial court handled the issue of his competency to stand trial. After reviewing the record in these causes, we conclude that because the evidence presented during the guilty plea hearing did not raise a bona fide doubt as to appellant's competence, the trial court did not err in failing to conduct a hearing and empanel a jury pursuant to article 46.02 of the Texas Code of Criminal Procedure. Moreover, because the trial court was presented with conflicting evidence regarding appellant's competence at the motion for new trial hearing, we conclude the trial court did not abuse its discretion in denying appellant's motions. Finally, in light of our conclusions regarding the issue of appellant's competency, we conclude appellant has not satisfied his burden of showing his guilty pleas were involuntary. Consequently, we overrule appellant's three points of error and affirm the trial court's judgments.

### BACKGROUND

On January 10, 1994, appellant Jeffrey Don Brown pleaded guilty, without benefit of plea bargain agreements, to five aggravated robberies and one aggravated assault. During the punishment phase of the plea hearing, several witnesses testified that appellant had learning and emotional difficulties. None of these witnesses suggested that appellant was incompetent to stand trial, and consequently, the trial court did not conduct any type of competency hearing. Instead, the trial court sentenced appellant to imprisonment and a fine in each case.

Appellant then filed a motion for new trial in each case, claiming he was incompetent when he entered his guilty plea. For the first time, appellant offered expert affidavit testimony suggesting he was not competent

to stand trial when he entered his guilty pleas and the trial court sentenced him. The trial court denied appellant's motions for new trial without a hearing, and appellant appealed to this Court. We set aside appellant's notices of appeal and the trial court's orders denying the motions for new trial and remanded these causes so that the trial court could hold a hearing on appellant's motions. Following a hearing at which each side presented evidence about appellant's competence, the trial court again denied appellant's motions for new trial. The trial court then entered new judgments. Appellant now appeals, raising three complaints.

First, appellant argues the trial court erroneously refused to hold a competency hearing during the plea hearing because the evidence sufficiently raised a bona fide doubt regarding his competency. Next, he contends his convictions violate due process because he was incompetent to stand trial and thus the trial court erroneously overruled his motions for new trial. Finally, appellant argues that because he was not competent, he did not freely, voluntarily, and intelligently enter his guilty pleas. To support each argument, appellant relies both on testimony introduced at the punishment hearing and at the hearing on his motions for new trial. Each point of error, however, relates to trial court conduct at different stages in the proceedings and, consequently, presents a different issue for review. The first issue involves the scope of this Court's review of the trial court's action in not conducting a hearing and empaneling a jury to determine competency. The second issue concerns the standard the trial court is to apply in deciding whether to empanel a jury to determine competency.

Once we answer these questions, we can turn to the merits of each point of error.

FAILURE TO CONDUCT COMPETENCY HEARING

A person is legally incompetent if he lacks either (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him.[1] Article 46.02 of the Texas Code of Criminal Procedure sets out the procedure a trial court must follow to evaluate a defendant's competency to stand trial when that issue is raised before or "during trial."[2] Under article 46.02, section 2(b), if the competency issue is not raised before trial, in certain circumstances, the trial court must address the issue during trial:

Sec. 2. (b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.[3]

Section 2(b) requires the trial court to conduct a hearing if evidence from any source raises a bona fide doubt as to a defendant's competency.[4] Evidence capable of creating a bona fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source.[5] If, at the section 2(b) hearing, the defendant presents more than a scintilla of evidence that would rationally lead to the conclusion of incompetency, the trial court must empanel a jury to determine the defendant's competency.[6]

1. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1(a) (Vernon 1979).

2. TEX.CODE CRIM. PROC. ANN. art. 46.02, §§ 2(a), (b) (Vernon 1979).

3. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979) [hereinafter section 2(b)]; *see Ex parte Thomas*, 906 S.W.2d 22, 25 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); *Mata v. State*, 632 S.W.2d 355, 358 (Tex.Crim.App. [Panel Op.] 1982); *see also Casey v. State*, 924 S.W.2d 946, 947 (Tex. Crim.App.1996) (per curiam).

4. *See Thomas*, 906 S.W.2d at 25 (holding that when no bona fide doubt exists as to defendant's competency to stand trial, trial court is not required to hold a section 2(b) hearing).

5. *Townsend v. State*, 427 S.W.2d 55, 63 (Tex. Crim.App.1968); *Thompson v. State*, 915 S.W.2d 897, 902 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd) (op. on reh'g).

6. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 4(a) (Vernon Supp.1997); *see Barber v. State*, 737 S.W.2d 824, 828 (Tex.Crim.App.1987); *Hill v. State*, 788 S.W.2d 858, 859 (Tex.App.—Dallas 1990, no pet.).

In his second point of error, appellant asserts the trial court erroneously refused to hold a section 2(b) hearing and then empanel a jury to determine his competency when he pleaded guilty. Appellant asks this Court to consider the evidence adduced at both the plea hearing and the motion for new trial hearing when reviewing the trial court's actions. Because we hold that, when evaluating the trial court's application of article 46.02, we may ordinarily only consider evidence presented before sentencing, we disagree.

The plain language of section 2(b) compels this conclusion. Section 2(b) only requires a hearing "[i]f during the trial evidence of the defendant's incompetency" is brought to the court's attention from any source.[7] According to this statutory dictate, the motion for new trial hearing must have occurred "during trial" if this Court is to consider the evidence offered during that hearing. But the phrase "during trial" is not broad enough to encompass proceedings, like a motion for new trial hearing, that occur after sentencing.

Section 2(b) does not define "during trial" or that phrase's scope. We must therefore give the term its plain meaning.[8] Typically, the term "trial" refers to the portion of criminal proceedings that begins when the parties pick a jury, continues through the evaluation of the defendant's guilt, and ends when the defendant, if guilty, is sentenced. Reinforcing the common perception that sentencing ends a trial, the Texas Court of Criminal Appeals held recently that for competency proceedings' purposes, "sentencing marks the final act of the trial stage."[9] Further bolstering this conclusion, the court of criminal appeals in another case refused to conclude that competency evidence presented at a hearing on an application for writ of habeas corpus raised a bona fide doubt of competency requiring a section 2(b) hearing because the evidence was not presented to the trial court when the appellant pleaded guilty.[10] Moreover, the court of criminal appeals has previously stated that the motion for new trial hearing is not part of the trial.[11] We therefore conclude that postsentencing proceedings occur after, and not during, trial.[12]

Although this Court can envision few cases in which an appellate court can consider postsentencing evidence to determine whether the trial court erred in not conducting a section 2(b) hearing during trial, we acknowledge that this kind of situation may arise—

7. *See* Tex Code Crim. Proc. Ann. art. 46.02, §§ 2(a), (b) (Vernon 1979).

8. *See Daniels v. State,* 754 S.W.2d 214, 219 (Tex. Crim.App.1988).

9. *Casey,* 924 S.W.2d at 949.

10. *See Ex parte McWilliams,* 634 S.W.2d 815, 821 (Tex.Crim.App.1980), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982), *disapproved on other grounds by May v. State,* 726 S.W.2d 573 (Tex.Crim.App.1987).

11. *See Trevino v. State,* 565 S.W.2d 938, 941 (Tex.Crim.App.1978).

12. *See Gilbert v. State,* 852 S.W.2d 623, 626 (Tex. App.—Amarillo 1993, no pet.) (period between deferred adjudication of guilt and later adjudication of guilt is "during trial" for article 46.02's purposes); *Pipken v. State,* 671 S.W.2d 626, 629 (Tex.App.—Houston [1st Dist.] 1984, no pet.) (same); *Williams v. State,* 628 S.W.2d 848, 851 (Tex.App.—Amarillo 1982); (competency issue raised during trial when presented in motion filed after guilty verdict and punishment assess-

ment, but before trial court rendered judgment and sentenced defendant). *Williams* has a tortured procedural history. On petition for discretionary review, the Texas Court of Criminal Appeals reversed the Amarillo court's judgment and remanded for reconsideration in light of the State's contention on rehearing that the motion did not raise the competency issue. *See Williams v. State,* 636 S.W.2d 1 (Tex.Crim.App.1982) (per curiam) (*Williams II* ). The Amarillo court again concluded that appellant's competency had been raised during trial, but concluded it had applied the wrong standard in reviewing the trial court's decision not to impanel a jury to determine the issue. It then affirmed the trial court's judgment. *See Williams v. State,* 667 S.W.2d 783, 788 (Tex.App.—Amarillo 1982) (op. on remand) (*Williams III* ). On subsequent petition for discretionary review, the court of criminal appeals agreed with the Amarillo court's conclusion that competency was raised during trial. *See Williams v. State,* 663 S.W.2d 832, 833 (Tex. Crim.App.1984) (*Williams IV* ). But the court of criminal appeals then overruled the case upon which the Amarillo court relied in *Williams III,* held that the Amarillo court was correct in *Williams I,* reversed the judgment in *Williams III,* and reinstated the judgment in *Williams I.*

for example, when evidence presented at a motion for new trial hearing serves to explain or define evidence of incompetence that was already before the court during trial.[13] This is not such a case, however. Appellant filed his motion for new trial and related evidence after sentencing, raising evidence that was not brought to the trial court's attention during trial as required by section 2(b). This new evidence did not serve to explain or define evidence already before the court during trial. Thus, we conclude that we cannot consider the postsentencing evidence presented in this case in evaluating whether the trial court erroneously failed to hold a section 2(b) hearing.

■ Having determined the scope of our article 46.02 review, we now address the merits of appellant's second point of error. We review the trial court's actions under section 2(b) for an abuse of discretion,[14] viewing the evidence in the light most favorable to the party with the burden of securing the finding, disregarding contrary evidence and inferences.[15] At the time appellant entered his guilty pleas, the trial court did not conduct any type of hearing regarding his competency. Appellant now complains that evidence adduced during the punishment phase raised a bona fide doubt as to his competency; thus, the trial court should have conducted a section 2(b) hearing and then empaneled a jury to determine his competency. But if the evidence before the trial court through sentencing was not sufficient to require a section 2(b) hearing, the trial court did not err.[16]

Appellant testified on his own behalf when he entered his guilty pleas. Nothing in the responses he gave to the questions asked of him raised a bona fide doubt as to his competence to stand trial. Nor did any witness who testified during the punishment phase of

the plea hearing raise a bona fide doubt about appellant's competency.

Bethany Quinn testified first. She stated that she was a former Dallas Independent School District (DISD) psychologist. She has a Ph.D. in psychology and is licensed by the State of Texas to practice psychology. Quinn met and examined appellant in 1989 when he was a DISD student. She also reviewed earlier reports opining that appellant suffered from severe articulation disorder. Based on her review and evaluation, Quinn concluded that appellant had oppositional defiant disorder and "low severe behavior." She also concluded that appellant was disabled and emotionally disturbed. Quinn also testified that appellant was out of control, lost his temper frequently, rebelled against authority, and used foul language. She also considered him more than "at risk" and, in fact, handicapped. Because of these identified problems, Quinn had earlier recommended that appellant be placed in a special education program. According to Quinn, he was placed in a school that had a small student-to-teacher ratio. While there, he was given as much one-on-one help as he would accept. But given that appellant's father inconsistently consented to appellant's placement, the DISD had difficulty getting appellant into a stable program.

Quinn never testified that appellant was incompetent to stand trial. Specifically, she offered no testimony that appellant was unable to consult with his lawyer with a reasonable degree of rational understanding or that he lacked a rational as well as factual understanding of the proceedings against him.[17] Instead, she testified that appellant (1) could not control his behavior, (2) is extraordinarily dangerous, (3) is a follower, lacking any leadership abilities, and (4) is socially maladjusted. Either faulty learning (appellant never learned the usual rewards and punishment for good or bad behavior) or neurological

---

13. *See, e.g., Morrison v. State,* 795 S.W.2d 276, 278–80 (Tex.App.—Houston [14th Dist.] 1990, no pet.) (considering evidence adduced after trial at section 2(b) hearing where issue of competency was raised during trial but not resolved).

14. *See Boling v. State,* 617 S.W.2d 241, 242 (Tex. Crim.App. [Panel Op.] 1981).

15. *See Barber,* 737 S.W.2d at 828.

16. *See Arnold v. State,* 873 S.W.2d 27, 36–37 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 830, 115 S.Ct. 103, 130 L.Ed.2d 51 (1994).

17. *See* Tex.Code Crim. Proc. Ann. art. 46.02, § 1(a) (Vernon 1979).

problems caused his social maladjustment. According to Quinn, she believes appellant could suffer neurological dysfunction because he has had episodes of explosive outbursts— a primary indicator of neurological dysfunction—since he was eight or nine years of age. She concluded that appellant should receive long-term treatment in a highly structured program away from his family and that he should receive a neurological examination. While this testimony paints a picture of an extremely troubled young man with behavioral problems, it does not raise a bona fide doubt that he met the legal definition of incompetency.

Similarly, neither did Andrew Brown, Sr., appellant's father, offer evidence raising a bona fide doubt about appellant's competency. Instead, Brown offered his lay opinion that appellant has had behavioral problems since he was about two years old. Brown said that appellant loses self-control and does things he does not mean to do. He further opined that appellant needs help. Finally, Brown stated that he did not believe appellant realized what he was doing when he committed these offenses because at the time he was not in his right mind. That statement did not raise a bona fide doubt about appellant's competence, however, because it related only to appellant's mental status when he committed the offenses rather than his mental status at trial.[18]

Ruby Jeannette Chaucer, appellant's mother, also failed to raise a bona fide doubt about appellant's competency. Her son, she stated, began exhibiting unusual behavior when he went to school. She testified that he was verbally abused and told he was bad. Although Chaucer stated that appellant is not a problem at home and that he just wanted to be accepted, she also testified that she evicted appellant from her home because the apartment manager had complained about appellant playing his stereo too loudly. Chaucer was afraid she would be evicted if she did not evict appellant. Chaucer said that appellant needs a structured environment where he can learn discipline and that he needs therapy. Again, while Chaucer presented evidence that appellant had behavioral problems, she did not address whether he was unable to consult with his lawyer with a reasonable degree of rational understanding or that he lacked a rational as well as factual understanding of the proceedings against him.[19] Consequently, her testimony did not raise a bona fide doubt that appellant was not competent when he entered his guilty pleas.

Competence is presumed; therefore, appellant had the burden of showing he was incompetent at the time he entered his guilty pleas.[20] To require a section 2(b) hearing, this evidence had to raise a bona fide doubt about appellant's competency to stand trial. It did not. That appellant rebelled against authority, was socially maladjusted, and had learning disabilities and possible neurological problems did not raise the issue of his competency to enter his guilty pleas.[21] In short,

---

18. See *Valdes–Fuerte v. State*, 892 S.W.2d 103, 108 (Tex.App.—San Antonio 1994, no pet.) (evidence of person's mental status at time of offense not evidence of incompetency to stand trial); *O'Neil v. State*, 642 S.W.2d 259, 260 (Tex.App.— Houston [14th Dist.] 1982, no pet.) (characterization of defendant as having a "mental problem" and "crazy" did not relate to statutory test of incompetency); cf. *Porter v. State*, 623 S.W.2d 374, 380 (Tex.Crim.App.1981) (evidence of earlier psychological problems not enough to show defendant incompetent to stand trial), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982); *Gilbert*, 852 S.W.2d at 627 (fact that defendant has been treated by psychiatrist not evidence of incompetency to stand trial).

19. See Tex.Code Crim. Proc. Ann. art. 46.02, § 1(a) (Vernon 1979).

20. See Tex.Code Crim. Proc. Ann. art. 46.02, § 1(b) (Vernon 1979); *Arnold*, 873 S.W.2d at 35.

21. See *Culley v. State*, 505 S.W.2d 567, 569 (Tex. Crim.App.1974) (testimony that defendant had learning disabilities and was in special education classes did not raise issue of competency to stand trial); *Ortiz v. State*, 866 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (evidence of learning disabilities alone not sufficient to show defendant incompetent to stand trial); cf. *Leyva v. State*, 552 S.W.2d 158, 160 (Tex. Crim.App.1977) (even judicial determination that person is mentally ill is not determination of mental competency); *Valdes–Fuerte*, 892 S.W.2d at 107 (same); *Francis v. State*, 877 S.W.2d 441, 445 (Tex.App.—Austin 1994, pet. ref'd) (per curiam) (disruptive behavior in courtroom not itself evidence of incompetence to stand trial); *Koehler v. State*, 830 S.W.2d 665, 666–67 (Tex.App.—San Antonio 1992, no pet.) (judicial determination

although appellant presented considerable evidence during the punishment phase that he had social and educational difficulties, none of the evidence raised any concern that, when he pleaded guilty, appellant did not have either (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as a factual understanding of the proceedings against him.[22] Viewing the evidence in the light most favorable to appellant, we conclude the evidence available to the trial court during the plea hearing did not raise a bona fide doubt as to his competency so as to require the trial court to conduct the threshold section 2(b) hearing.[23] Therefore, the trial court did not err in failing to empanel a jury to determine the issue of appellant's competency to enter his guilty pleas.[24] Accordingly, we overrule appellant's second point of error.

## MOTIONS FOR NEW TRIAL

In his first point of error, appellant complains his convictions violate due process because he was incompetent when he pleaded guilty.[25] Appellant specifically complains that the trial court erroneously denied his motions for new trial because the evidence he presented at that hearing clearly demonstrated a reasonable probability that he was incompetent when he entered his guilty pleas. Thus, he contends this Court should either remand for a retrospective competency hearing or, if that cannot be done, for a new trial.

■■ A defendant may challenge his competency to stand trial in a motion for new trial.[26] When raising the competency issue in this manner, a defendant may present evidence regarding his competency developed after conviction.[27] But because the motion for new trial hearing occurs after sentencing and not "during trial,"[28] the trial court does not apply the section 2(b) bona fide doubt standard. Instead, the trial court applies the traditional standard used to determine whether to grant a motion for new trial—the trial court considers all the evidence presented, judges the credibility of the witnesses, and resolves conflicts in the evidence.[29]

■■ Consequently, to evaluate an appellant's claim that the trial court erroneously denied his motion for new trial, we consider all of the competency evidence presented at the motion for new trial hearing.[30] We reverse the trial court only if we determine it abused its discretion. A trial court abuses its discretion if its decision is arbitrary or unreasonable.[31] We apply this standard because, at this stage of the proceeding, the trial court determines whether the integrity of its judgment has been impugned—in this instance, by the defendant's incompetency during trial.[32] The trial court, having observed the witnesses at both the trial and the motion for new trial hearing, is in the best position to make this determination. If, in resolving the conflicts in the evidence regarding competency, the trial court determines that the integrity of the judgment has been called into question, it may then empanel a

that person incompetent to handle own affairs not evidence of incompetency to stand trial).

22. See Tex.Code Crim. Proc. Ann. art. 46.02, § 1(a) (Vernon 1979); Arnold, 873 S.W.2d at 37.

23. See Thomas, 906 S.W.2d at 25; Mata, 632 S.W.2d at 358.

24. See Arnold, 873 S.W.2d at 26–27.

25. See Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); Thompson, 915 S.W.2d at 901.

26. See Tex.R.App. P. 30; Boling, 617 S.W.2d at 242; Nelson v. State, 629 S.W.2d 888, 890 (Tex. App.—Fort Worth 1982, no pet.).

27. See Boling, 617 S.W.2d at 242; cf. Nelson, 629 S.W.2d at 890.

28. See Tex.Code Crim. Proc. Ann. art. 46.02, § 2(b) (Vernon 1979).

29. See Hafford v. State, 864 S.W.2d 216, 217 (Tex.App.—Beaumont 1993, no pet.).

30. See Boling, 617 S.W.2d at 242; cf. Nelson, 629 S.W.2d at 890.

31. See Lewis v. State, 911 S.W.2d 1, 7 (Tex.Crim. App.1995); Hafford, 864 S.W.2d at 218.

32. Cf. Trevino, 565 S.W.2d at 941 (purpose of motion for new trial hearing is to determine whether case should be retried).

jury to determine retrospectively the competency issue or order a new trial.[33] If the trial court determines otherwise, it may deny the motion.

■■■ In this case, the trial court considered conflicting evidence regarding appellant's competency when it ruled on appellant's motions for new trial. First, Mark Jardina testified. Jardina stated he has a master's degree in education and is a state-licensed psychological associate who performs psychological evaluation testing. The office of Tom Van Hoose, a licensed psychologist, employs Jardina as a psychological associate. Jardina evaluated appellant twice after he pleaded guilty and was sentenced. Jardina first evaluated appellant in February 1994, one month after appellant pleaded guilty. He performed a clinical interview in which he obtained information on appellant's background and reviewed appellant's educational records provided by DISD. He also administered to appellant a series of tests: (1) the Weschler Adult Intelligence Scale, Revised, to evaluate cognitive functioning; (2) the Bender Gestalt Test to rule out an organic brain disorder, as well as to evaluate emotional functioning; (3) the Rorschach Inkblot Test to evaluate personality functioning; (4) Projective Figure Drawings to evaluate personality and emotional functioning; and (5) the Substance Abuse Subtle Screening Inventory (SASSI) for chemical abuse history and current functioning.

Jardina reassessed appellant in August 1995. At that time, he reinterviewed appellant and reviewed records from appellant's time in prison. Jardina also (1) reassessed appellant's IQ using the Weschler Intelligence Scale; (2) administered the Wide Range Achievement Test (an educational screening test); (3) administered the Projective Figure Drawings; and (4) administered the Bender Gestalt Test. Finally, Jardina reviewed appellant's medical records that showed appellant suffered a psychotic episode while in prison and that the drug Haldol, a drug used to treat psychosis or schizophrenia, was prescribed for appellant.

According to Jardina, appellant functions at a borderline range of intelligence (at about the fourth to fifth grade level) and needs a great deal of supervision and help making life decisions. Jardina also testified that the Bender Gestalt Test indicated mild organic impairment. He stated that appellant is easily frustrated and has a speech impairment that sometimes makes him difficult to understand. Jardina reported appellant's cognitive abilities "shut down" when he feels pressured. According to Jardina, when an authority figure asks appellant if he understands a document, appellant responds affirmatively; however, appellant is not able to explain the document with any understanding or depth. Jardina concluded his testimony by acknowledging his familiarity with the legal definition of incompetency and then opining that appellant was incompetent when he entered his guilty pleas.

Margaret McKinney testified next. She has a master's degree in counseling and a Ph.D. in psychology, and is a licensed psychologist in both Texas and Oklahoma. Although McKinney never personally spoke with appellant, she supervised Jardina when he performed appellant's initial assessment. Additionally, she reviewed all of appellant's 1994 and 1995 test results, as well as appellant's prison records. McKinney stated that the Weschler Test results indicated borderline intellectual functioning with weaknesses in the areas of common sense, judgment, and abstract thinking. She further stated that the Rorschach Inkblot Test showed depression and cognitive disarray in appellant's ability to think and reason. Like Jardina, McKinney is familiar with the legal definition of the term incompetency, and, in her opinion, appellant was not legally competent when he pleaded guilty.

Dr. Quinn testified again. She stated that appellant was referred to her for an evaluation because he could not be "contained" in the classroom. Quinn administered nonverbal testing due to his speech impairment, IQ tests, and personality tests. She also obtained his social and developmental history. From these tests results, she opined that

**33.** *Cf. Brown v. State,* 871 S.W.2d 852, 860 (Tex. App.—Corpus Christi 1994, pet. ref'd) (remanding case for retrospective competency hearing or, if not possible, new trial).

appellant was unable to control his behavior and was severely emotionally disturbed. Quinn testified that an educational program was developed for appellant; however, appellant's father would not cooperate and removed appellant from the program.

Unlike her earlier testimony, Quinn stated at this hearing that appellant's low intellectual ability rendered him incapable of forming a rational and factual understanding of the proceedings against him. Reconciling her earlier testimony, Quinn stated that while she had concerns about appellant's competency when she testified at his punishment hearing, she was not given the opportunity to raise them. She said that she believed her role at the plea hearing was to mitigate the punishment imposed. She believed she recommended treatment and neurological testing. Quinn stated that she was not aware at the time of trial that appellant had been evaluated and found to be competent.

Appellant's father also testified again. According to Brown, he spoke to appellant before the guilty plea hearing on the advice of appellant's counsel. Brown testified that he did not think his son understood the proceedings because he did not know the crimes for which he was charged. Brown further testified that appellant's mother told appellant it would be best if he signed the papers so that he would receive treatment.

Kenneth Weatherspoon, appellant's trial counsel, testified that he visited appellant in jail and on other occasions. He also testified that he had some telephone conversations with appellant. Weatherspoon stated that he spoke with appellant about the facts and charges in the cases and appellant was able to discuss them. Further, before appellant signed the plea papers, he specifically showed appellant the indictments. According to Weatherspoon, before he entered his pleas, appellant was reluctant to sign the papers. But Weatherspoon then explained to appellant the plea papers' purpose and appellant's rights. Appellant told Weatherspoon he understood this information and signed the plea papers. While Weather-

spoon did tell appellant's parents about the options for handling the cases, he never asked them to obtain appellant's signature on the plea papers. Finally, Weatherspoon testified that he initially questioned appellant's competency and asked to have a psychiatrist evaluate appellant. The trial court granted this request.

Next, Dr. Michael Ray Pittman, the psychiatrist who performed appellant's court-ordered psychiatric examination, testified. Pittman is a board-certified psychiatrist. He examined appellant in March 1993 and June 1993. According to Pittman, he has performed 1700 to 1800 competency examinations. In sixty percent of those cases, he found the individual examined incompetent.

Pittman examined appellant on June 16, 1993 before trial. During that examination, he took appellant's complete life history, questioned appellant about his understanding of the instant proceedings, and administered his version of the Bender Gestalt Test, which is not a recognized version of the test. Based on his evaluation, Pittman did not find multiple personality disorder in appellant's history. Nor did he determine that appellant suffered from hallucinations, delusions, or paranoia. And he concluded that appellant is not mentally retarded. Moreover, according to Pittman, when he questioned appellant about these cases, appellant gave "good" answers about various court personnel and the evidence to be introduced. Based on his evaluation, Pittman opined that appellant was competent to stand trial and that he was capable of cooperating with his attorney and formulating a defense when he pleaded guilty.

At the motion for new trial hearing, the trial court was the sole judge of the credibility of the witnesses[34]—we do not substitute our judgment for the trial court's.[35] Because the evidence regarding appellant's competency conflicts, the trial judge did not abuse his discretion in denying the motions for new trial.[36] Accordingly, we conclude that appellant's convictions do not violate due process,

---

**34.** See Lewis, 911 S.W.2d at 7; Hafford, 864 S.W.2d at 218.

**35.** Lewis, 911 S.W.2d at 7.

**36.** See id.; see also Hafford, 864 S.W.2d at 218.

and we overrule appellant's first point of error.

## GUILTY PLEAS

In his third point of error, appellant claims his guilty pleas were not freely, voluntarily, and intelligently entered. Appellant ties his complaint regarding the voluntariness of his pleas to his claim that the evidence showed he was incompetent when he entered his pleas. Having already reviewed that record under the applicable standards of review, we reject appellant's voluntariness challenge.

The record reflects that the trial court admonished appellant in writing in accordance with article 26.13 of the Texas Code of Criminal Procedure.[37] Appellant testified that he understood the charges against him and the possible range of punishment. Moreover, appellant testified that he reviewed the documents with his attorney; that he understood his rights; and that he voluntarily waived them. This is prima facie evidence that appellant's pleas were knowingly and voluntarily entered.[38] The burden thus shifted to appellant to show his pleas were involuntary.[39]

We have already determined that no evidence presented during the plea hearing raised a bona fide doubt that appellant was incompetent when he entered his guilty pleas. Moreover, we have also already concluded that the trial court did not err when it denied appellant's motions for new trial. Consequently, we conclude that appellant has not satisfied his burden to show that he involuntarily pleaded guilty because he was not competent to stand trial. We overrule appellant's third point of error.

We affirm the trial court's judgments.

---

**37.** *See* TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989 & Supp.1997).

**38.** *See Robinson v. State,* 739 S.W.2d 795, 801 (Tex.Crim.App.1987); *Harris v. State,* 887 S.W.2d 482, 484 (Tex.App.—Dallas 1994, no pet.).

**39.** *See Robinson,* 739 S.W.2d at 801; *Harris,* 887 S.W.2d at 484.