

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00110-CR

---

JAMES BUNK PHELPS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 276th District Court
Titus County, Texas
Trial Court No. CR 19,405

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A Titus County jury acquitted James Bunk Phelps of the charged offense of continuous sexual abuse of a young child,[1] but convicted him of the lesser-included offense of aggravated sexual assault of a child.[2] Based on the jury's verdict, Phelps was assessed twenty-five years' imprisonment.

In this appeal, Phelps contends that the trial court reversibly erred by (1) improperly limiting his cross-examination of the complaining witness, (2) denying his motion for new trial because of incompetency, (3) not including lesser-included offenses in the jury charge, and (4) improperly limiting his voir dire of the venire about lesser-included offenses. Finding no error, we affirm the trial court's judgment.

## I. Background

Between 2008 and 2013, Lisa[3] and her parents, Mick and Jane, were regular visitors in Phelps' home. Typically, Mick and Phelps' son would play guitars while the other family members listened and visited with each other. In 2016, when she was fifteen years old, Lisa told Jane about three instances when Phelps inappropriately touched her in 2012 and 2013.

At trial, Lisa testified that Phelps had touched her four times in ways that made her uncomfortable, each occurring when she was in the sixth grade. Lisa described an instance when Phelps rubbed her back while she sat on his lap out of sight of her parents. Soon Phelps began

---

[1]*See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2018).

[2]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2018).

[3]We refer to the minor victim and her family members by pseudonyms. *See* TEX. R. APP. P. 9.10.

2

massaging her butt under her underwear. The encounter ended when one of her parents came outside. On another occasion, Phelps accompanied Lisa to the pond on his property, and on the way back to the house, he asked her for a hug. As they hugged, he massaged her back, then brought his hands to her front and massaged her breasts through her clothing. Lisa testified that, on another occasion, she was on the porch with Phelps, trying to go to sleep in his lap. She felt his lips on her lips, then he tried to stick his tongue in her mouth. At that point, she pulled away and went inside the house to find her mother. On the fourth occasion, Lisa was reclined on a couch in Phelps' living room, playing a video game. Phelps sat down beside her, and soon his hand was up her skirt, with two of his fingers inside her vagina. They remained there until someone came inside, and he quickly put his hand in his lap.

Phelps denied all of Lisa's accusations and denied that he had done anything inappropriate to Lisa. Phelps also put on evidence that, at the end of 2012, he moved from the house where Lisa said all the events happened.

## II. No Abuse of Discretion by Limiting Cross-Examination

In his first issue, Phelps asserts that the trial court abused its discretion when it limited his cross-examination of Lisa. During cross-examination, Phelps sought to ask Lisa whether she had ever been in trouble for lying at home.[4] Phelps argues that this question was intended to attack

---

[4]In his offer of proof, Phelps proposed to ask Lisa:

> Q. So when I was asking that question, my follow-up question was going to be based on what Judge Rolston asked you earlier when he said do you understand what a lie is. Have you been in trouble before for lying at home? Right? Do you remember that question?
> A. Yes, sir.
> Q. What was your answer?
> A. Yes, sir.

3

Lisa's credibility by contradicting her testimony that she knows the difference between the truth and a lie. The State argues, as it did at trial, that this question seeks to attack Lisa's credibility through specific instances of her conduct.

### A. Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Saucedo v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004); *Warr v. State*, 418 S.W.3d 617, 619 (Tex. App.—Texarkana 2009, no pet.). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Martin*, 173 S.W.3d at 467; *Warr*, 418 S.W.3d at 619. And we will uphold the trial court's ruling if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Hernandez v. State*, 351 S.W.3d 156, 160–61 (Tex. App.—Texarkana 2011, pet. ref'd).

### B. Analysis

Generally, any "witness may be cross-examined on any relevant matter, including credibility." TEX. R. EVID. 611(b). That said, the Texas Rules of Evidence limit how a witness's credibility may be impeached. Rule 608 allows a witness's credibility to be attacked by testimony, or by an opinion, about the witness's reputation for having a character for truthfulness or untruthfulness. TEX. R. EVID. 608(a). But except for evidence of certain criminal convictions, our Rules forbid cross-examining a witness on, or offering extrinsic evidence of, particular instances

---

Q. You have been in trouble for lying before?
A. Yes.
Q. Even at home?
A. Yes.

4

of the witness's conduct to impeach her credibility in general, or her character for truthfulness. *See* TEX. R. EVID. 608(b), 609; *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009); *Driggers v. State*, 940 S.W.2d 699, 705 (Tex. App.—Texarkana 1996, pet. ref'd). On the other hand, our Rules permit cross-examination of a witness, and extrinsic evidence of, specific instances of conduct to show the witness's bias, interest, or motive to be untruthful in her testimony. *See, e.g.*, TEX. R. EVID. 404(b)(2), 613; *Hammer*, 296 S.W.3d at 563.

Here, Phelps did not ask Lisa about specific instances of being untruthful to show her bias, interest, or motivation to be untruthful in her testimony. Rather, he sought to ask her if she had ever been in trouble, and particularly whether she had ever been in trouble for lying at home. Phelps contends he was trying to impeach her prior statement that she knew the difference between the truth and a lie. But even if we accept Phelps' explanation, the clear implication of this line of questioning is that, even though Lisa knows the difference between the truth and a lie, she chooses to lie. In other words, that these instances, when she got in trouble for lying, show that Lisa's character is to be untruthful. That said, this type of question, which attacks the witness's character for truthfulness, is specifically barred by Rule 608(b). *Hammer*, 296 S.W.3d at 563.

As a result, we cannot say that the trial court's exclusion of this evidence was an abuse of discretion. We overrule Phelps' first issue.

**III.    No Abuse of Discretion in Denying Motion for New Trial Because of Incompetency**

Next, Phelps asserts that the trial court abused its discretion by denying his motion for new trial because of incompetency.[5]  After the jury returned its guilty verdict, Phelps claims he suffered from psychiatric distress, attempted suicide, suffered a cardiac event, and was hospitalized.  These events, he argues, show that he was incompetent to stand trial.  Phelps also points to an exchange he had with the trial court before the punishment hearing, which he characterizes as "delirious outbursts," as more evidence of his incompetency.[6]

**A.    Standard of Review**

A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Rodriguez v. State*, 329 S.W.3d 74, 80 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

When a defendant's incompetency at trial is asserted in a motion for new trial, we examine all of the evidence,[7] including new evidence presented at the hearing on the motion for new trial,

---

[5]In his brief, Phelps identified this issue as follows:  "The Trial Court Improperly Denied Defendant's Motions to Have Defendant Examined for Competence to Stand Trial."  However, his argument only asserts that the trial court erred in denying his motion for new trial because the preponderance of the evidence showed that Phelps was incompetent to stand trial at both the guilt/innocence phase and the punishment phase.  Therefore, we will address the issue that Phelps has argued.

[6]In his motion for new trial, Phelps complained only that the trial court had erred in refusing to have him *examined* for competency.  However, at the hearing on his motion for new trial, Phelps argued that he was incompetent throughout the trial, and he offered evidence which he thought supported his argument.

[7]This is distinguishable from the standard used under Article 46B.004 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004 (West 2018).  When there is a suggestion of incompetency, whether before or during trial up to sentencing, the trial court must hold an informal inquiry to determine whether there is some

to make our determination of whether he was incompetent during the trial. *Rodriguez*, 329 S.W.3d at 80; *Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Edwards v. State*, 993 S.W.2d 171, 175–76 (Tex. App.—El Paso 1999, pet. ref'd). We use this standard because, in a motion for new trial hearing, the trial court determines whether the defendant's incompetency impugned the integrity of its judgment. *Edwards*, 993 S.W.2d at 176 (citing *Brown v. State*, 960 S.W.2d 772, 778 (Tex. App.—Dallas 1997, pets. ref'd)). We also recognize that the trial court, which observed the defendant at trial, "is in the best position to make this determination." *Id.* (citing *Brown*, 960 S.W.2d at 778). As a result, we "appl[y] the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence." *Purchase*, 84 S.W.3d at 699 (citing *Edwards*, 993 S.W.2d at 176; *Brown*, 960 S.W.2d at 778).

## B. Analysis

In Texas, "[a] person is incompetent to stand trial if the person does not have [either] . . . sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding[,] or . . . . a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2018). In his brief,

---

evidence to support a finding that the defendant may be incompetent to stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (citing TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). In the informal inquiry stage, the trial court must only consider the evidence of incompetency, and not weigh it against the evidence of competency, to determine whether there is "*some* evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id.* at 564 (citing *Turner v. State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013)). The procedure under Article 46B.004, however, does not apply after sentencing. *Rodriguez*, 329 S.W.3d at 79 (citing *Morris v. State*, 301 S.W.3d 281, 290 (Tex. Crim. App. 2009)); *see* TEX. CODE CRIM. PROC. ANN. art. 46B.005(d) (West 2018) (providing that the trial court may determine a defendant's competency to stand trial "at any time before the sentence is pronounced").

7

Phelps argues only that the evidence shows that he did not have a rational understanding of the proceedings. After reviewing the record, we find that the trial court did not abuse its discretion in denying Phelps' motion for new trial.

The record shows that, shortly before starting the punishment phase of the trial, Phelps' trial counsel filed a suggestion of incompetency and an affidavit in support. Before bringing in the jury, the trial court held an informal inquiry,[8] with Phelps present. Phelps' attorney testified that when the guilty verdict was read on the previous evening, Phelps became agitated and uncontrollable and would not communicate with him. When he tried to talk to him in the hallway, Phelps asked to go to the bathroom, and his trial counsel followed him. In the bathroom, Phelps put an unidentified object in his mouth, and when his trial counsel told him to spit it out, Phelps went into a toilet stall. When trial counsel heard a commotion and Phelps would not respond to his inquiries, trial counsel forced the door open and found Phelps on the floor of the stall and "uncommunicable." Trial counsel had his investigator call 9-1-1, and Phelps eventually lost consciousness. Emergency personnel responded and transported Phelps to the hospital.

Trial counsel also testified that he believed Phelps was competent when the trial started, but that the events of the previous day had convinced him that Phelps was incompetent. He stated that he had tried to communicate with Phelps before the hearing and that he did not think Phelps was capable of assisting in his defense or that he had any understanding of the proceedings about to take place.

---

[8]*See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c).

8

Two Titus County deputies then testified that, on the night before, Phelps was transferred from the hospital to the Titus County Jail and placed in a safety cell. Phelps responded appropriately when addressed and told the deputies that he was supposed to return to court that morning for sentencing.

After the trial court determined that there was no evidence that Phelps may be incompetent, and denied a stay of the proceedings, the trial court had the following exchange with Phelps:

> THE COURT: . . . . Mr. Phelps, I'm going to tell you something.
>
> THE DEFENDANT: I can't hear you.
>
> THE COURT: Okay, you need to understand from Mr. Cobb that I'm not going to allow outbursts from people out in the gallery, nor from you. And you may not be interested --
>
> THE DEFENDANT: I'm tired of being railroaded.
>
> THE COURT: I'm not interested in comments like that. Do not make any -- you'll be allowed to testify if you want to.
>
> THE DEFENDANT: It don't do any good in this courtroom.
>
> THE COURT: And I found you competent to stand trial, and we're going to proceed on with this trial.
>
> THE DEFENDANT: You're going to do it. What you're going to do, do it.
>
> THE COURT: No, sir. You've elected to have a jury handle this, and that's what we're going to do. And I'm pretty sure you talked to Mr. Cobb about that.
>
> THE DEFENDANT: I didn't select anything. This was all selected for me.

The record does not reveal that there were any more statements or outbursts by Phelps for the rest of the punishment hearing. Phelps was not present in the courtroom when the jury announced its

9

punishment verdict, but returned later that day for sentencing, after being released from the hospital.

Additional evidence was presented at the hearing on the motion for new trial. The evidence showed that Phelps was treated at Titus Regional Medical Center (TRMC) on June 12, 2018, the evening the guilty verdict was handed down, and on June 13, 2018, the day of the punishment hearing.[9] On June 12, Phelps was diagnosed with suicide ideation and overdose on nitroglycerine. His assessment showed a normal mental condition, and on admittance to TRMC, he yelled at a police officer, "Just shoot me in the head . . . I got convicted for a crime that I didn't commit."[10] Phelps was released later that night after spending around two and one-half hours at TRMC. On June 13, Phelps was diagnosed with chest pain due to anxiety, with no evidence of a heart attack or a seizure.

The evidence also showed that the Texas Department of Criminal Justice assigned Phelps to Skyview, a psychiatric facility of the Correctional Institutions Division. However, there was no testimony as to why Phelps was assigned to this facility.

Based on this record, we find that the trial court could reasonably conclude that Phelps was distraught over the jury verdict finding him guilty, which led to his actions in the bathroom and his refusal to communicate with his trial counsel, but that he had a rational understanding of the proceedings. At the hospital, shortly after his purported suicide attempt, Phelps was

---

[9]Apparently after final arguments at the punishment hearing, Phelps held his chest, fell out of his chair, and passed out. He was transported to TRMC for treatment.

[10]A recording from the police officer's body camera shows that shortly after being admitted to TRMC, Phelps was alert and aware of where he was, and who the police officer was.

communicative, aware of his surroundings, and expressed his displeasure at the jury's verdict. And his conversation with the deputies and his exchange with the trial court before the start of the punishment hearing shows that he understood the purpose and significance of that hearing. Additionally, there was no testimony showing that Phelps was suffering from a mental illness or disorder at any time during the trial that prevented him from having a rational and factual understanding of the proceedings.

We therefore find that the trial court did not abuse its discretion by denying Phelps' motion for new trial because of incompetency. We overrule Phelps' second issue.

## IV.   Issues Alleging Jury Charge Error and Voir Dire Error Were Inadequately Briefed

In his third issue, Phelps complains that the trial court erred by not including an instruction in the jury charge for the lesser-included offense of assault by offensive touching.[11] Similarly, in his fourth issue, Phelps asserts that the trial court improperly limited his voir dire by refusing to allow him to ask questions about the lesser-included offense of assault by offensive touching.[12] Phelps argues that, since there was insufficient evidence of continuous sexual abuse of a young child, the trial court should have included a charge, and should have allowed him to voir dire the venire, on the lesser-included offense of assault by offensive touching. Phelps cites no authority supporting, nor does he set forth any analysis for, his assertion that assault by offensive touching is a lesser-included offense of continuous sexual abuse of a young child.

---

[11]Although he also faults the trial court for including an instruction on the offense of continuous sexual abuse of a young child, Phelps was acquitted of that offense and thereby suffered no harm. We find this complaint lacks merit.

[12]In his brief, Phelps lists "criminal assault or battery" as lesser-included offenses. Yet, at trial, he only specifically identified assault by offensive touching as a lesser-included offense. Therefore, at most, he has preserved only a complaint regarding assault by offensive touching on appeal.

"To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (quoting TEX. R. APP. P. 38.1(i)); *see Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). We have "no obligation to construct and compose issues, facts, and arguments for an appellant." *Taylor*, 558 S.W.3d at 218 (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673). Rather, under Rule 38.1(i), it is the party's task to explain or discuss why an argument has substance. *Id. (*citing *Wolfe*, 509 S.W.3d at 343; *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673). A brief that does not comply with Rule 38.1(i) is inadequately briefed and presents nothing for our review. *See Lucio*, 351 S.W.3d at 898.

To determine whether a trial court should have given an instruction on a lesser-included offense, "[t]he first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).

> An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g) (per curiam).

Also, a trial court only abuses its discretion by limiting voir dire "when it prohibits a proper question about a proper area of inquiry." *Clay v. State*, 390 S.W.3d 1, 9 (Tex. App.—Texarkana

2012, pet. ref'd) (citing *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003)).  As Phelps acknowledges in his brief, "[a] question is proper if it seeks to discover a juror's views on an issue applicable to the case."  *Id*. (quoting *Sells*, 121 S.W.3d at 755).

Thus, in order to show that the trial court erred in failing to include an instruction on the lesser-included offense, and to show that the trial court abused its discretion by prohibiting questions regarding juror's views on an issue applicable to the case, Phelps needed to show in his brief that assault by offensive touching is a lesser-included offense of the indicted offense— continuous sexual abuse of a young child.  In his brief, Phelps did not set forth the elements of either continuous sexual abuse of a child or of assault by offensive touching.  Nor did he attempt any analysis to show that the latter is a lesser-included offense of the former.  Phelps also cited no authority supporting this contention.  We therefore find that Phelps has inadequately briefed these issues and has presented this Court with nothing for our review.  *See Lucio*, 351 S.W.3d at 898. We overrule Phelps' third and fourth issues.

V. **Conclusion**

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:     January 30, 2019
Date Decided:      March 6, 2019

Do Not Publish

13