# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00570-CR

---

**Christopher Nicholson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY**
**NO. C-1-CR-17-200083, THE HONORABLE MIKE DENTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Nicholson of the offense of assault, family violence. *See* Tex. Penal Code § 22.01(b)(2). The trial court assessed punishment at one year in county jail but suspended imposition of the sentence and placed Nicholson on community supervision for two years. In a single point of error on appeal, Nicholson asserts that the trial court abused its discretion in overruling his motion for new trial. We will affirm the trial court's order placing Nicholson on community supervision.

## BACKGROUND

The State charged Nicholson with assaulting his girlfriend. The case proceeded to trial, which included testimony by the girlfriend, an officer who investigated the assault, and a

paramedic who treated the girlfriend and transported her to a hospital. Based on this and other evidence, the jury found Nicholson guilty of the charged offense.

After Nicholson was placed on community supervision, he filed a motion for new trial asserting that he was not "mentally present" during trial. In an affidavit attached to his motion, Nicholson explained that at the time of trial, he recently had plastic surgery to repair a broken nose, still had stents in his nose from the surgery, and was taking prescription painkillers in addition to other medication that he was "already on," including medication to treat his high blood pressure. Nicholson claimed that these circumstances made it difficult for him to pay attention during trial:

> I was having difficulty breathing as my nose was congested and I could not blow it and it was extremely painful having the stents in it making it hard to concentrate and focus. This was also making it difficult to sleep so I was on little to no sleep during the week of the trial. Being on this medication definitely affected [my] attentiveness and awareness during the proceedings. I also had difficulty communicating with the lawyer, was confused, and had trouble following what was going on in the court. The things that he was saying I didn't understand and things were moving so fast that I couldn't follow. I was not understanding what the lawyers, judge and witnesses were saying most of the time and I was in a lot of pain. I began to feel that I just wanted to get it over with so that I could try to get some rest.

Nicholson's two trial attorneys also submitted affidavits in which they described their interactions with and observations of Nicholson before and during trial. One of the attorneys averred:

> Mr. Nicholson started acting erratically during the trial. He often made audible remarks. At other times he would be leaned back in his chair and seemed very disengaged. His demeanor and behavior were at times distracting to me and at other times he was unable to provide insight into testimony being given. I noticed

2

Mr. Nicholson's demeanor and emotional stability vary greatly throughout the trial.

The attorney added that the defense "trial strategy had to be modified due to Mr. Nicholson's erratic behavior and apparent inability to regulate his emotions" and that Nicholson had "missed one scheduled meeting the week before trial due [to] his need to recover from a medical procedure." Nicholson's other trial attorney averred the following:

> Several days before the trial on Monday 6/17/19, Mr. Nicholson went in for a surgery relating to his nose. I believe this was Wednesday the 12th. He then cancelled an appointment with [co-counsel] and myself for Thursday the 13th, and was unable to meet with us until Sunday the 16th.

> I believe he was taking prescribed medications as a result of this surgery through the entire trial.

> Mr. Nicholson acted erratic throughout the trial, he talked, scoffed, and muttered to himself, and argued with witnesses on the stand from his seat. There is a possibility that, at least in the beginning, he thought this behavior went unnoticed. However, he was loud and obvious enough for the jury to notice, as well as the prosecution team, who made little effort to hide their displeasure.

> During the State's case-in-chief, Mr. Nicholson at one point put in headphones and began listening to music directly from a device he had with him. I cannot recall if it was a computer, a tablet, or a phone.

> During closing argument, Mr. Nicholson fell asleep at counsel table. Mr. Nicholson was unable to contribute to his defense in any meaningful way during trial.

The motion for new trial was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). This appeal followed.

3

## STANDARD OF REVIEW

"An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if no reasonable view of the record could support the trial court's ruling." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017) (citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011)). "This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling." *Id.* (citing *Riley*, 378 S.W.3d at 457; *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)). "In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and it must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Id.* (citing *Riley*, 378 S.W.3d at 457; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007)). "The trial court's ruling is within the 'zone of reasonable disagreement' when there are two reasonable views of the evidence." *Id.* (citing *Riley*, 378 S.W.3d at 457).

## ANALYSIS

On appeal, Nicholson asserts that he was not "meaningfully present" during trial, which resulted in him being denied his rights to due process, to confront the witnesses against him, and to the effective assistance of counsel. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); *Snyder v. Massachusetts*, 291 U.S. 97, 114 (1934) ("A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel and cross-examine his accusers." (internal citations omitted)); *see also United States v. Gagnon*, 470 U.S. 522, 526

(1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." (internal citation omitted)). Nicholson contends that although he was "physically present" at trial, he was not "mentally" present. The substance of Nicholson's complaint is that he was incompetent to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) ("As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." (citing *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013))).

"A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. art. 46B.003(a); *Boyett*, 545 S.W.3d at 563; *Rodriguez v. State*, 329 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see Dusky v. United States*, 362 U.S. 402, 402 (1960) (explaining that test for competence to stand trial is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him"). "A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence." *Ex parte*

*LaHood*, 401 S.W.3d 45, 54 (Tex. Crim. App. 2013) (citing Tex. Code Crim. Proc. art. 46B.003(b)).

"When a defendant raises the issue of incompetency in a motion for new trial, a court looks to all the evidence—including new evidence presented on the motion—to determine whether the appellant was actually incompetent at the time of the trial." *Rodriguez*, 329 S.W.3d at 80 (citing *Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Edwards v. State*, 993 S.W.2d 171, 175–76 (Tex. App.—El Paso 1999, pet. ref'd); *Brown v. State*, 960 S.W.2d 772, 778 (Tex. App.—Dallas 1997, pet. ref'd)). "[T]he trial court applies the traditional standard used to determine whether to grant a motion for new trial," i.e., it "considers all the evidence presented, judges the credibility of the witnesses, and resolves conflicts in the evidence," *Brown*, 960 S.W.2d at 778, while the appellate court reviews the trial court's decision for abuse of discretion, reversing only if the decision is arbitrary or unreasonable, *Purchase*, 84 S.W.3d at 699.

The evidence in this case consisted of the affidavits of Nicholson and his two trial attorneys. In Nicholson's affidavit, he indicated that during trial, he was in pain, congested, had difficulty breathing, and "was on little to no sleep during the week of the trial," which made it "hard to concentrate and focus." Nicholson also claimed that the medication he was taking affected his "attentiveness and awareness during the proceedings," that he "had difficulty communicating" with his lawyers, that he was "confused," that he "had trouble following what was going on in the court," and that he "was not understanding what the lawyers, judge and witnesses were saying most of the time." Nicholson's attorneys averred that Nicholson: "act[ed] erratically during the trial"; "often made audible remarks"; "seemed very disengaged" at times

6

during trial; "talked, scoffed, and muttered to himself, and argued with witnesses on the stand from his seat"; listened to music on his headphones; and "fell asleep" during closing argument.

Initially we note that the trial court, which observed Nicholson's behavior and interactions with counsel throughout trial, was entitled as the factfinder to disbelieve the statements contained within the affidavits. *See, e.g.*, *Ex parte Ali*, 368 S.W.3d 827, 840 (Tex. App.—Austin 2012, pet. ref'd) (concluding that trial court, as factfinder, was entitled to disbelieve statements contained within defendants' affidavits); *Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005) ("The trial court is not required to believe factual statements contained within an affidavit, even when they are uncontradicted by other affidavits."), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted."). Moreover, the trial court would not have abused its discretion in finding that the statements in the affidavits, even if true, fell short of demonstrating that Nicholson was incompetent at the time of trial. Evidence that the defendant was taking medication or was suffering from a mental impairment or illness during trial is not sufficient to establish incompetence. *See Turner*, 422 S.W.3d at 691; *Montoya v. State*, 291 S.W.3d 420, 425-26 (Tex. Crim. App. 2009); *Hall v. State*, 766 S.W.2d 903, 906 (Tex. App.—Fort Worth 1989, no pet.); *see also United States v. Minnis*, 489 F.3d 325, 329 (8th Cir. 2007) ("[T]he afflictions complained of—stress, lack of sleep, and general depression—are not the type of mental disease or defect rendering individuals mentally incompetent."). Rather, "[t]here must be 'some evidence from which it may rationally be inferred not only (1) that the defendant suffers some degree of debilitating mental illness, and

7

that (2) he obstinately refuses to cooperate with counsel to his own apparent detriment, but also that (3) his mental illness is what fuels his obstinacy.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner*, 422 S.W.3d at 696). The trial court could have reasonably found that there was no such evidence here. As for the statements of trial counsel indicating that Nicholson behaved erratically and made inappropriate verbal remarks during trial, the Court of Criminal Appeals has rejected the contention that "unruly and disruptive courtroom demeanor are probative of incompetence to stand trial. If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (citing *Burks v. State*, 792 S.W.2d 835 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)).

Finally, we observe that there is nothing in the record of Nicholson's trial to suggest that he lacked either (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. We find it significant that no one at Nicholson's trial, including his trial attorneys and Nicholson himself, raised any issue regarding his competence at any point during his trial, when the trial court could have inquired into the issue. On this record, we cannot conclude that the trial court abused its discretion in finding that Nicholson failed to satisfy his burden to prove by a preponderance of the evidence that he had been incompetent to stand trial and that, consequently, Nicholson was not entitled to a new trial on that basis. *See Rodriguez*, 329 S.W.3d at 80; *Godoy v. State*, 122 S.W.3d 315, 320-21 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Purchase*, 84 S.W.3d at 699-700; *Edwards*, 993 S.W.2d at 175-77; *Brown*, 960 S.W.2d at 778-81; *see also Gibson v. State*, No. 13–16–00238–CR, 2017 WL 3530930, at *4

8

(Tex. App.—Corpus Christi-Edinburg Aug. 17, 2017, no pet.) (mem. op., not designated for publication).

We overrule Nicholson's sole point of error.

## CONCLUSION

We affirm the trial court's order of community supervision.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   August 21, 2020

Do Not Publish